213 F.Supp. 527 (1963)
In the Matter of Arnold R. RHINE, also known as A. R. Rhine, Bankrupt.
MOUNTAIN IRON & SUPPLY COMPANY, Petitioner and Cross-Respondent on Review,
The Halliburton Company, Petitioner and Cross-Respondent on Review,
John W. Shireman, Trustee in Bankruptcy, Respondent and Cross-Petitioner on Review,
v.
VALLEY STEEL PRODUCTS COMPANY, Sauder Tank Company, Inc., Eugene V. Smith, Richard H. Day, Harley Sales Company of Kansas, Inc., Merril C. Temmer and Other Reclamation Petitioners, Respondents on Review.
No. 24691.
United States District Court D. Colorado.
January 24, 1963.
*528 Norma L. Comstock and Norman H. Comstock, Denver, Colo., for John W. Shireman, Trustee in Bankruptcy.
Jimmie E. Grey, Wichita, Kan., and Robert P. Kelly, Pawhuska, Okl., for Mountain Iron & Supply Co.
Eugene F. Costello, Denver, Colo., for Halliburton Co.
Thomas M. Burns, Wichita, Kan., for Richard H. Day and Eugene V. Smith.
James W. Buchanan, Denver, Colo., for Sauder Tank Co., Inc.
*529 Charles M. Stoddard, Denver, Colo., for Harley Sales Co. of Kansas, Inc.
Carl H. Selliger, Jr., Denver, Colo., for Valley Steel Products Co.
Thomas M. Sullivan, Denver, Colo., for Merril C. Temmer and others.
DOYLE, District Judge.

MOUNTAIN IRON AND SUPPLY COMPANY
Involved herein is a review of orders of the Bankruptcy Court allowing claims, secured and unsecured, and disallowing certain claims. Before the Court is a Petition for Review of Mountain Iron and Supply Company, a creditor, which has asserted secured claims, the cross-petition of John W. Shireman, Trustee, and the cross-petition of the Halliburton Company, another creditor. The transactions here in question occurred in the latter part of the year 1959. During that year and prior thereto, the bankrupt, Arnold R. Rhine, had been engaged in a secondary waterflood recovery project in Washington County, Oklahoma. He held extensive oil and gas leases in that county.
In June, 1959, bankrupt negotiated with Mountain Iron and Supply Company seeking to obtain a line of credit looking to the purchase of materials and supplies for use in a waterflood project of all of the leases owned by him in Washington County, Oklahoma. In connection with this line of credit a written memorandum was executed on or about June 15, 1959.[1] In it Mountain Iron and Supply Company approved bankrupt for credit and in the course of the agreement it was stated that the line of credit was for the equipping of a waterflood project known as the "water flood unit in Oklahoma." A further provision of this memorandum was that the equipment purchased would constitute a continuous contract and that the Mountain Iron and Supply Company would be allowed to treat the entire unit as one project and the equipment sold to be used thereon as being used on the entire flood project regardless of descriptions set forth on the countercharges. A further provision was that Mountain Iron could file liens, if necessary, on the entire unit to secure all of the equipment sold to the bankrupt; and finally, the contract provided that the continuous contract and line of credit would remain in effect until expressly revoked by Mountain Iron & Supply Company.
At the time of entering into the memorandum agreement, the bankrupt owed Mountain Iron $12,804.69 for materials and supplies which had been furnished him in 1954 and 1955. Mechanics' liens had been filed and foreclosure suits were pending in Washington County, Oklahoma, with respect to the Davidson, Lucas A and Bailey leases. In addition, interest was owing; that is, according to Mountain Iron, on this old account.
Our major concern here is with the "new" account, that which was created as a result of the memorandum agreement. On or about July 24, 1959 the Credit Manager for Mountain Iron had a *530 discussion with the bankrupt and obtained an agreement from him whereby he would increase his payments on the old account to $2,000.00 a month beginning with the payment due on July 30, 1959. Thereafter, payments were made by the bankrupt as follows: July 31, 1959, $718.95; September 4, 30 and November 6, 1959, payments in the amount of $2,000.00 were made. On or about November 6, 1959, the Credit Manager had a further discussion with Rhine. At this time he agreed to pay $30,000.00 on the new account on or before November 15, 1959; he further agreed (according to Mountain Iron) that if he failed to make such payment the payment which he did make could be used first to pay the principal sum of the old account in full. Instead of sending $30,000.00 as agreed, the bankrupt sent $14,000.00 on November 15, and of this sum Mountain Iron applied $6,085.74 to close out the principal amount owing on the old account. However, Mountain Iron at first applied the $14,000.00 to the new account and it is noteworthy that the check of the bankrupt specified on its face that it should be applied to the old account; and it is also noteworthy that the referee did not find an agreement of November 1, 1959 allowing Mountain Iron to apply part of this November 15 payment to the old account.
It seems undisputed that as of December 2, 1959, the amount which had accrued on the new account was an amount in excess of $91,000.00. The claim was for $91,238.09 and Mountain Iron says the exact balance is $91,150.22, as of December 2, 1959, the date when the mechanics' lien was filed in the office of the District Court of Washington County, Oklahoma. This lien statement in its entirety was filed in the Bankruptcy Court on January 28, 1960, as a secured claim. The claim itself is quite extensive: it asserts a claim to "the following-described real estate in Washington County, Oklahoma," to wit: "the Rhine Petroleum Industries and A. R. Rhine Waterflood Unit covering the properties set forth in Exhibit `B' attached hereto." Also attached to the lien statement in Oklahoma and, of course, the claim here, is the memorandum agreement to which reference has been made hereinabove. Exhibit "B" failed to describe all of the Rhine properties and an attempt was made after the four-month period to expand the descriptions to include leases which were not originally designated, and one of the major problems here is whether this amendment is appropriate.
In addition to claim No. 72, filed January 28, 1960, there are additional claims:
Claim No. 48, filed January 28, 1960, in the amount of $6,784.35 (unsecured);
Amended claim No. 1151, filed July 21, 1960, in the amount of $98,089.11. (This was to amend claim No. 72 and was tendered as a secured claim);
Amended claim No. 1064, in the amount of $7,782.28, an unsecured claim filed March 31, 1960.
The specific questions which have been certified by the referee are set forth as follows:
"Questions with respect to petition to review filed by Mountain Iron & Supply Co.:
"1. Did the Referee err, upon the evidence before him and the applicable law, in reducing the allowance of claim No. 72 from $91,238.09 to $85,064.48?
"2. Did the Referee err in denying the motion of Mountain Iron & Supply Co., for leave to amend claim No. 72 when it was tendered (a) on January 29, 1962, and (b) at the time of the hearing, or both?
"3. Did the Referee err, upon the evidence before him and the applicable law, in disallowing claim No. 1151?
"4. Did the Referee err, as a matter of law, in making the conclusions of law found in the second and third paragraphs of Conclusions of Law III made as a part of the findings, conclusions and orders entered June 4, 1962?
"5. Did the Referee err, as a matter of law, in making the conclusions of law *531 found in the second and third paragraphs of Conclusions of Law IV made as a part of the findings, conclusions and orders entered June 4, 1962?
"6. Did the Referee err, as a matter of law, in making the conclusions of law found in Conclusions of Law V made as a part of the findings, conclusions and orders entered June 4, 1962?
"Questions with respect to cross-petition to review filed by John W. Shireman, Trustee:
"7. Did the Referee err, upon the evidence before him and the applicable law of Oklahoma, in finding, holding and concluding that Mountain Iron & Supply Co., acquired and has a valid mechanics' lien on the property described in Lien No. 6076 filed in the District Court of Washington County, Oklahoma?
"8. Did the Referee err, upon the evidence before him, and the applicable law of Oklahoma, in finding, concluding and holding that Mountain Iron & Supply Co. had sustained the burden of proof and established its right to security on the properties described in Exhibit B of the Mechanics' lien statement of December 2, 1959?
"9. Did the Referee err, upon the evidence before him and the applicable law of Oklahoma, in finding, concluding and holding that a single lien statement covering specifically described leaseholds creates a lien upon all of the leases, in the manner and to the extent set forth in the Referee's Conclusion of Law II made as a part of his findings, conclusions and orders of June 4, 1962?
"10. Did the Referee err, considering the evidence then before him and the applicable law of Oklahoma, in denying the motion of the trustee, made at the conclusion of the evidence of Mountain Iron & Supply Co., to dismiss the affected claim of said Company?
"11. Did the Referee err, upon the evidence before him and the applicable law of Oklahoma, in denying the Trustee's motion to dismiss under Federal Rule 41(b) (1)? [sic]
"Questions with respect to cross-petition to review filed by The Halliburton Company:
"12. Did the Referee err, upon the evidence before him and the applicable law of Oklahoma, in allowing claim No. 72 as secured in any amount in excess of $6000.00?
"And these questions are certified to the Judge for his decision thereon."

DISCUSSION OF THE ISSUES
1. The major controversy arises here because of description deficiencies in claim No. 72. Although Mountain Iron evidenced intent to file its lien against all of the Rhine projects in Washington County, it at the same time committed itself to particular legal descriptions, those set forth in Exhibit "B" to the lien statement and also attached to the claim in Bankruptcy Court. These Exhibit "B" descriptions do not include all of the Rhine properties. This was apparently due to the failure of the abstractor to furnish all of the Rhine lease legal descriptions; consequently, an effort was made by amendment to include all the legal descriptions.
The trustee's position on this is in support of that of the referee. He maintains that any secured claims of Mountain Iron should be limited to the leaseholds described by survey description in Exhibit "B" of the December 2, 1959 lien statement, and that any effort to enlarge the scope of the lien by adding leases after the four-month period is ineffectual and void. The referee adopted this viewpoint, holding that even the liberal amendment provisions found in the Oklahoma law and provided in the Federal Rules of Civil Procedure do not allow this.
2. Another issue arises from the treatment by Mountain Iron of a payment made by Rhine on November 15, 1959. This payment was made by him to reduce the "new" account. Mountain Iron had originally credited this $14,000.00 to the new account; however, a debit memo in the amount of $6,085.74 was issued on the day that the money was *532 received and this sum was thereby transferred to the old account in payment of the balance due. The referee held that this $6,085.74 was wrongfully applied to the old account and in accordance with this conclusion reduced Mountain Iron's secured claim based on the "new" account, from $91,238.09 to $85,064.48. Mountain Iron contends that this action was not justified and that it should be awarded the total amount claimed.
3. The disallowance by the referee of interest which Mountain Iron contends accrued on the old account is also asserted as error. This item was claimed as part of claim No. 1151 and is in the amount of $5,712.89. The holding of the referee was that since there is no claim in the bankruptcy court for the principal amount under the old account, there was nothing on which the interest could be calculated and to which it could attach and upon that basis he dismissed claim No. 1151.
4. Mountain Iron's fourth main objection on this review is that the referee erred in his application of section 67, sub. c(2) of the Bankruptcy Act to the materials and supplies located in the warehouse which are referred to in these proceedings as item No. 40, the referee's position was that none of the claimants (including Mountain Iron) were allowed to assert a lien in respect to this unapplied merchandise which the trustee found in the warehouse; that it had not been used in connection with any particular leasehold, and that the reduction to possession or sequestration required by section 67, sub. c(2) had not occurred.
In reaching the conclusion that Mountain Iron was entitled to allowance of a secured claim in the amount of $85,064.48, the referee concluded that where materials and supplies are furnished under contract with the owner of oil and gas leases and are intended to be incorporated into and used for the development of secondary recovery project on the said leases, and where such materials and supplies are furnished on a continuous open account, such open account constitutes a single contract and a single lien statement filed in four months covering various leases described by survey definition in such lien statement creates a valid and enforceable lien upon all of such leases including those so described on which the evidence fails to show that any such materials or supplies were either furnished or used. Thus, the referee took the view that it is not necessary where there is a single, continuous contract, to show that there was actual use of the materials and supplies on particular leases.
The trustee maintains that this ruling of the referee was clearly erroneous for the reason that only a small part, if any, of the material and supplies alleged to have been furnished were shown by the evidence to have been used upon or delivered to the leasehold properties described in the lien statement, and particularly in Exhibit "B" thereof. It is said in this regard that the Oklahoma law requires a lien claimant to establish that materials and supplies furnished were used upon or incorporated in the particular properties which the claimant seeks to subject to a lien. It is said that the evidence discloses that a large portion of the materials and supplies furnished by it was not furnished to or used upon the properties upon which was granted a lien and that it is impossible to determine from the evidence what proportion of its claim is for materials actually furnished to the properties on which it was granted a lien. The trustee further points out that the applicable Oklahoma law requires proof of the fact of delivery to or use of at least some materials or supplies on each of the leases described in the lien statement and, therefore, it was error for the referee to adopt a viewpoint that a single, continuous unit contract would supply this deficiency.
The Halliburton Company, a creditor, which also seeks to establish a secured claim, also joined the trustee upon the basis that there was a failure of evidence to establish security in any amount in excess of $6,000.00.

*533 I.

WHETHER THE REFEREE ERRED IN REDUCING CLAIM NO. 72 FROM $91,238.09 TO $85,064.48
Concluding that the claimant was not justified in applying the sum of $6,085.74 to the old account, the referee reasoned that Mountain Iron and the bankrupt had entered into an agreement whereby he would pay $2,000.00 per month on the old account and that he substantially complied with this agreement, at the same time making various other payments, all of which were credited to the new account. When the $14,000.00-payment was made on or about November 14, 1959, it had to be, in order to comply with the agreement between the parties, applied to the new account, and as a matter of fact this is exactly what Mountain Iron did, subsequently attempting to transfer a portion of it to the old account. The referee said that the attempt to transfer was in violation of the existing agreement between the claimant and the bankrupt and amounted to application without notice to him. Mountain Iron argues that a new contract was reached between bankrupt and him early in November, whereby the bankrupt was to pay by November 15, $30,000.00 to reduce the new account down to a more reasonable figure. It is said that this contract also provided that if he did not do so, Mountain Iron had the right to use whatever amount came in in order to pay off the old account in full; that the bankrupt paid not $30,000.00 but really only $14,000.00 and that this breach of agreement justified its action; that the credit of the $14,000.00 in the new account was for accounting purposes only, and that they had a right to transfer this sum to the old account in order to pay it off in full.
The referee failed to find that an agreement effective to supersede the earlier one was entered on November 6. The right of the debtor, owing more than one debt to a creditor to designate which debt or debts he wishes to apply payment to seems well settled. See 40 Am. Jur., 792, § 110, and see also Sipes v. John, 177 Okl. 299, 58 P.2d 854 (1936); Wheeler v. American Inv. Co., 167 Okl. 558, 31 P.2d 117 (1934). Moreover, the principle is also recognized that where a debtor on making payment to his creditor, directs that it shall be applied to a particular credit it cannot be thereafter changed or revoked without the consent of the debtor. 40 Am.Jur., 793, §§ 115, 116; In re Automatic Equipment Mfg. Co. (U.S.D.C.Nebr.1952), 103 F.Supp. 427. Furthermore, a creditor who treats a payment in a particular way is bound by his act. 40 Am.Jur., 803, § 128.
In the case at bar the creditor applied the $14,000.00 to the new account in accordance with the express direction of the debtor. This was in accord with the practice which the parties had established whereby the credit was applied to the oldest items of the account, thus discharging the oldest item and leaving unpaid the most recent. Having committed himself to crediting the new account and having done so in accordance with a previously-existing agreement and a specific direction on the part of the bankrupt that it be credited in this manner, the attempt on the part of Mountain Iron to modify this book entry thereby satisfying the old account, was ineffectual. It follows that the referee was correct in his holding that this item had to be credited to the new account; therefore, his conclusion that the balance of claim No. 72 was in the amount of $85,064.48 was correct.

II.

THE QUESTION WHETHER MOUNTAIN IRON SHOULD HAVE BEEN ALLOWED TO AMEND ITS CLAIM SO AS TO INCLUDE LEASES WHICH HAD NOT BEEN FILED BY SPECIFIC SURVEY DESCRIPTION WITHIN THE FOUR MONTHS PERIOD
In support of its position that it should have been allowed to amend, Mountain Iron relies on the applicable Okahoma *534 statute,[2] which declares that a lien statement may be amended in furtherance of justice in any matter. Mountain Iron also calls attention to the Oklahoma procedural provision in respect to amendments.[3] Here again the only restriction is that the amendment shall be in furtherance of justice.
The substantive rights of Mountain Iron in perfecting its mechanics' lien would, of course, be governed by the statutes of Oklahoma. Whether the claim in bankruptcy should have been held amendable is subject to Rule 15, Federal Rules of Civil Procedure. Since this provision is not different from the Oklahoma sections, it would appear that the only issue here is whether the referee could properly have concluded that the amendment was not in furtherance of justice.
The Oklahoma cases express and apply a liberal philosophy in respect to amendments to lien statements. Thus, in Corbitt v. Logan, 163 Okl. 86, 20 P.2d 894 (1933), it was said:
"* * * [T]he courts have always exercised a liberal policy in connection with the enforcement of these liens so long as no substantial wrong or injustice was shown to the opposing parties, apparently on the theory that these laws are made for the protection of laborers, artisans, and materialmen who should not be held to a fine degree of technicality in securing their legal rights. A substantial compliance with the terms of the statutes has always been held sufficient in such cases.
"Under the facts in the instant case the lien claim shows the amount claimed, the items thereof, the name of the claimant and a description of the property which would enable a party familiar with the locality to identify the premises intended to be described with reasonable certainty." (emphasis supplied)
Other Oklahoma cases have displayed a similar attitude. See Alberti v. Moore, 20 Okl. 78, 93 P. 543, 14 L.R.A.,N.S., 1036 (1908); El Reno Electric Light & Telephone Co. v. Jennison, 5 Okl. 759, 50 P. 144 (1897); Hemisphere Oil and Gas Co. v. Oil Well Supply, 104 Okl. 83, 230 P. 245 (1924), which allowed amendments which changed descriptions in property. Others have approved amendments changing the names of owners: Stan-American Oil Co. v. Archer, 333 P.2d 527 (Okl. 1958); Ketcham v. Cunliff et al., 77 Okl. 287, 187 P. 1095 (1920). In Spurrier Lumber Co. v. Montgomery et al., 165 Okl. 67, 24 P.2d 1005 (1933), the allowed amendment added an itemized list of materials furnished. And see Liberty Plan Co. v. Francis Smith Lumber Co., 360 P.2d 500 (Okl.1961), wherein it was said that the pleading will be considered to have been amended to conform to the proof even though no formal amendment was sought and failure to attach the itemized list to the claim would not render the claim defective. The following expression there appears:
"No variance between the allegations in a pleading and the proof will be deemed material or fatal unless it appear to the satisfaction of the court that it has actually misled *535 the adverse party to his prejudice. The burden rests on the aggrieved litigant to show in what manner he has been misled." 360 P. 2d, at 503.
Turning now to the applicable federal rule, it is to be noted that the policy implicit in Rule 15 has been summarized as follows:
"It re-emphasizes and assists in attaining the objectives of the rules on pleadings: that pleadings are not an end in themselves, but are only the means to a proper presentation of a case; that at all times they are to assist, not deter, the disposition of litigation on the merits." 3 Moore's Federal Practice, ¶ 15.02.
The liberal terms of Rule 15(a) have been noted, and there is no need to cite the cases supporting the liberal allowance of amendments under it. It is necessary, however, to consider the relation back problem which arises from the fact that there is here a limitations provision applicable. Rule 15(c) provides that the amendment relates if it arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading. Thus, if the descriptions tendered in the amendment here actually offered new, different or additional claims or causes of action, the relation back principle could not operate. See L. E. Whitham Construction Co. v. Remer (10 Cir., 1939), 105 F.2d 371. Therefore, the matter is reduced to whether Mountain Iron asserted, or attempted to assert a claim against the entire Rhine waterflood project in its claim No. 72 (the original one). Both the lien statements filed in Washington County, Oklahoma, and the proof of claim offered in the Bankruptcy Court set forth a claim against "The Rhine Petroleum Industries and A. R. Rhine Waterflood Unit." Furthermore, the contract made clear that the operation was to be treated as a unit even down to the point of asserting a lien. Other evidence of intent to claim a lien on the entire project appears in the invoices attached to the lien statement which invoices describe leases not within the Exhibit "B" descriptions. Thus, it is clear beyond dispute that Mountain Iron at least attempted to assert a lien to the entire project and it would be in the light of these evidences unjust and out of harmony with the liberal policy expressed above to hold that they had elected or had committed themselves to the Exhibit "B" properties. This was, after all, a single unit and a single claim. The most that a third person could conclude would be that there was patent ambiguity and such a conclusion would not form a basis for the assertion that he was misled. On the contrary, he would be placed on notice of the scope and extent of the claim. If the Exhibit "B" descriptions had not been included at all it is clear that a list of specific descriptions could have been added under the rule in Spurrier Lumber Co., supra, and Liberty Plan Co., supra.
Testing it with reference to federal practice, it would seem manifest that if this were a matter of amending pleadings, the amendment would be allowed.
It must be concluded that there was no basis for holding that the trustee and creditors were or could have been misled by the original claim. Furthermore, they could not have been misled to their prejudice. In what respect did they change their position or positions in the light of the original proof of claim? One's legal rights always stand in the shadow of unfavorable court determination as between the right asserted and a competing one, but this possibility does not mean that the rights in question are legally prejudiced. There has not been a change of position in reliance on the fact that the Exhibit "B" descriptions constituted all of the rights. It follows that the referee erred in denying leave to Mountain Iron to amend claim No. 72 when the same was tendered on January 29, 1962, and at the time of the hearing.

*536 III.

THE QUESTION WHETHER THE REFEREE ERRED IN FINDING AND CONCLUDING THAT MOUNTAIN IRON HAD SUFFICIENTLY SATISFIED THE "FURNISHED AND USED" REQUIREMENT OF THE OKLAHOMA STATUTE
The trustee and also the Halliburton Company contend that there is a dearth of evidence to establish that the materials and supplies in question were actually used in accordance with the requirement of the Oklahoma statute.[4] The trustee's position is that the proof must establish that particular items were used in specific leases. The referee rejected this strict approach holding that where the contract is a continuous one looking to development of a project as a whole, a single lien may be asserted applicable to all of the property on which a lien is filed regardless of whether used on all of the properties or not. Consistent with his conclusion that Mountain Iron was not entitled to amend, the referee limited them to the Exhibit "B" properties. In view of the holding above that this ruling was erroneous, the matter will have to be reconsidered by the referee because even under his conclusion, the scope and extent of the lien would be enlarged. Inasmuch as a remand is necessary it seems appropriate to comment on the finding and conclusion of the referee on this subject of use. The referee's Finding Number II[5] was to the effect that the claimant delivered the goods and merchandise for the purposes of the contract and that they were incorporated into and used or intended to be incorporated into and used for the development of a secondary recovery project. Conclusion III:
"Where material and supplies are furnished under contract with the owner of oil and gas leases and are intended to be incorporated into and used for the development of a secondary recovery project on the leases involved, and such materials and supplies are furnished on a continuous open account, such open account constitutes a single contract, and a single lien statement, filed within four months after the last material was furnished, covering various leases described by survey definition in such lien statement, whether contiguous or not, to any one of which any item of material was supplied, creates a valid and enforceable lien upon all of such leases, including those leases so described on which the evidence fails to show that any of such material or supplies was either furnished or used."
Thus, the evidence was not analyzed in detail or specifically and (in the conclusion of law) the unit approach was adopted. The question raised by the trustee is whether it was necessary to establish use of or incorporation of materials in particular leaseholds.
There is a conflict in the cases as to the meaning of use in the present context. Some cases hold that delivery of materials to a building site on the understanding that they are to be used there suffices to satisfy this requirement; other decisions require at least a showing of actual use in the building or other improvement for which they were *537 furnished. 39 A.L.R.2d 394, at 420 and 428.
The Oklahoma law on this subject was expounded by the Court of Appeals for the Tenth Circuit in Anderson, et al. v. W. L. Oakes Manufacturing Co., 197 F.2d 725 (1952). There, specific prefabricated material was delivered to the job. There was evidence that it was used and no evidence that it was diverted. This was held sufficient, the Court of Appeals saying:
"The further contention is made that under the Oklahoma Lien Law it is necessary not only to show that the material was furnished but also that it actually was used in the building upon which the lien is asserted, and that Oakes failed to show that the material in question went into the building. DeBolt v. Farmers' Exchange Bank, 51 Okl. 12, 151 P. 686, is cited to sustain this contention, but an examination of that case does not support this broad statement. There the uncontradicted evidence showed that the material furnished for the purpose of constructing a second story of a bank building, to be used as a lodge room, was diverted in large part by the contractor and was used elsewhere; that there was no evidence to show that any substantial part of the material was in fact used for the construction of the second story. Under these facts the court held that the lien claimant had failed to show that the material was used on the job. The court did recognize the general principle that the furnishing of the material upon the premises and the construction of the improvement prima facie established that the material was used. The opinion of the court also makes it clear that it is not required that one claiming a lien maintain a checker on the premises to see that every piece of material furnished for the job actually goes into the improvement. Thus the court said: `In order for the plaintiff to foreclose a materialman's lien, it is incumbent upon him to show that the material furnished went into the building. Rockel on Mechanics' Liens, § 22. Yet, when it is shown that the material was sold to be used in the building, that it was delivered to the builder upon the premises where the building is to be erected, and that the building was actually erected, and where there is some testimony showing that some of the material was used in the building, then a prima facie case is made out.' Such is the case before us. This material was specifically prefabricated and designed for use in these apartments alone. It was delivered on the job and there is ample evidence that it was used in the building. There is no showing that any of it was delivered to other jobs."
The DeBolt case which is commented on at some length in the opinion of the Court of Appeals, is a leading case in Oklahoma. It has been followed in Guest v. Shamburger, 120 Okl. 164, 251 P. 97 (1926), and in Goff v. Long-Bell Lumber Co., 142 Okl. 194, 286 P. 1 (1930). In the latter case the evidence of use was very general and presumptive. It was there said:
"This witness stated that he was on the place where the house was being constructed fifteen or twenty times, and that he saw no material being used of the kind he had agreed for the plaintiff to furnish other than that furnished by it; that Smith was not engaged in constructing any other building at that time which would have required the kind of material being furnished by the plaintiff."
As to the meaning of the term "furnished," the Oklahoma court in Walton Lumber Co. v. Cox, 29 Okl. 237, 116 P. 798 (1911), had this to say in speaking of doors which were delivered for use but which were rejected:
"* * * the same never having been accepted by anyone or used in *538 the building. The doors were not `furnished' within the contemplation of the statute. To be furnished so that a lien can exist the material must be actually used in the construction of the building. In order to recover in an action of this kind it is necessary to so allege and prove."
It would appear then from a cursory examination of the authorities that the requirement of use is real and not theoretical, and that there must be proof by the claimant that the property was not only delivered but was in fact incorporated. At the same time it is not necessary to have a checker present so as to be able to establish that each item went into the improvement.
The present case is also complicated by the fact that there are numerous distinct leaseholds which are however part of a single unit operation, and it would appear that the materials may have been used on some of the properties and not on others. As to this, the referee correctly concluded that the lien may be asserted against all of the leases including those "on which the evidence fails to show that any of such material or supplies was either furnished or used." This holding was a logical projection of the decision of the Oklahoma court in Parker v. Walker, 48 Okl. 705, 150 P. 690, 10 A.L.R. 1022 (1915) wherein it was said:
"We therefore hold that where a single contract is made to furnish material for the buildings on different lots, and no request is made to keep the accounts of each building separate, a single lien may be filed on all the buildings."
Insofar as the referee concluded that there can be a unit filing under the Walker case, it is sensible and correct. It is like saying that a lien claimant is not limited to the particular area or building where the material was incorporated. It can not be concluded, however, that this unit filing doctrine lessens or simplifies the claimant's burden to show, at least prima facie, actual use. This must be mentioned here because the main contentions between Mountain Iron and the trustee revolve around this. Mountain Iron seems to argue that the Walker case serves to dispense with its proof problems while the trustee argues that the Walker case is questionable authority and in no way renders unnecessary specific proof of delivery and use at each separate leasehold as a prerequisite to assertion as against any lease. The former contention falls short and the latter construction is not an accurate statement of the rule.
What then are the criteria to be derived from the statutes and the applicable cases? The following appear to be justifiable conclusions:
1. The lien claimant may assert his lien against all of the properties where as here the materials have been furnished in connection with a unit operation or project.
2. The burden of proving actual delivery of all materials to the property where it is to be used, or in this case, to the service warehouse, is on the lien claimant.
3. The burden of proving actual use of at least some of the materials on the property or in the improvements rests on the claimant. Proof of actual use (incorporation) of some of the materials on the property serves to raise a presumption that all of the materials delivered were, in fact, used in the construction or, in this case, the operation.
4. The presumption thus created may be rebutted if it appears that some of the materials were diverted elsewhere or were possibly withheld (in a warehouse for example) from actual use, or the presumption is rebutted by actual proof by the trustee or other contending person that the materials or supplies were not put to use.
One difficulty in appraising the present record is that it is incomplete. Certain offers of proof were rejected by the referee, and on a retrial these offers must be accepted. Moreover, the referee failed to make specific findings in accordance *539 with the mentioned criteria. It ought to be possible to determine, at least roughly, the quantity of material which was put to use and the quantity which was withheld from use. No evidence is apparent that any material was diverted elsewhere. Findings of fact based on evidence circumstantial or direct, could then be made.
The case must be remanded to the referee with instructions to hear the evidence previously tendered and rejected, and any other evidence which he deems appropriate to obtaining a true picture of the quantity of material furnished and used; or if there is no evidence of non-use of materials furnished, to apply the presumption referred to above. Findings and conclusions should then be entered in the light of the listed criteria.

IV.

THE QUESTION WHETHER THE REFEREE ERRED IN HOLDING SECTION 67, SUB. C(2) APPLICABLE TO THE MATERIALS AND SUPPLIES WHICH THE TRUSTEE FOUND IN THE WAREHOUSE AND SOLD FREE OF LIENS
The referee's finding Number XI is here questioned. It reads as follows:
"The estate of the bankrupt was insolvent on December 1, 1959, the date of bankruptcy, and has since said date remained insolvent; that the statutory mechanic's lien, created or recognized by the statutes of the State of Oklahoma on the personal property in the warehouse and pipe yard and designated by the trustee as Item No. 40, was not enforced by sale before the filing of the voluntary petition in bankruptcy, and that the lien was not accompanied by possession of, or by levy upon, or by sequestration or distraint of such property, and is not valid as against the trustee under the provisions of Section 67c(2) of the Bankruptcy Act."
It is urged by Mountain Iron that the trustee erred in applying Section 67, sub. c(2) of the Bankruptcy Act (Title 11 U.S.C. § 107, sub. c[2]) to certain materials and supplies sold to the bankrupt to be incorporated in the waterflood properties and which were located in the warehouse of the bankrupt which was on the waterflood properties. Section 67, sub. c(2) provides as follows:
"(2) the provisions of subdivision (b) of this section to the contrary notwithstanding, statutory liens created or recognized by the laws of any State for debts owing to any person, including any State or any subdivision thereof, on personal property not accompanied by possession of, or by levy upon or by sequestration or distraint of, such property, shall not be valid against the trustee: * * *."
Mountain Iron contends that the materials in the warehouse were part of the realty since they were sold by the trustee with the realty, and that § 67, sub. c(2) could not have been intended to cover personalty of this nature because it was the intent of § 67, sub. c(2) to invalidate claims which were essentially priorities and not to invalidate a "true lien" such as a mechanic's lien against an oil and gas or mining leasehold estate.
The plain meaning of the statute would indicate that all statutory liens were intended to be covered by the Section, and the mechanic's lien here asserted has no existence other than statutory. 4 Collier on Bankruptcy, § 67.22. The author discusses materialmen's and mechanics' liens as being statutory only, and also considers the requirements for "perfection and enforcement, the persons benefited, the property subject, the priorities as among other liens recognized by state law, and its general operation and effect," as being controlled by applicable state law, "except where the Bankruptcy Act positively provides limitations." Section 67, sub. c(2) provides such a positive limitation.
The fact that the trustee sold the materials in the warehouse (which materials *540 were exempted from the lien by § 67, sub. c(2) by the referee) along with the realty, would not have the effect of changing the character of the materials from personalty as they were not incorporated into nor were they an integral part of the leaseholds. See 73 C.J.S. Prohibition §§ 10, 11. Although the intention of the parties might affect the nature of the property in question, the conduct of the trustee would not affect whether or not it is subject to a claim in bankruptcy as personal or real property. This would be determined as of the time of the petition and would be unaffected by the manner of treatment of the property by the trustee in disposing of it. It is impossible to see how four and one-half inch pipe present and unused in a warehouse could be considered real property. It is concluded that the referee's holding that this property was subject to the provisions of § 67, sub. c(2) was correct.

V.

THE QUESTION WHETHER THE REFEREE ERRED IN DISALLOWING INTEREST CLAIMED IN CONNECTION WITH THE OLD ACCOUNT
In finding No. I the referee noted that claim No. 48 was filed as an unsecured claim for $6,784.35 for interest claimed to be owing on a stated balance unpaid on the "old" account, and that this was the same interest claimed under claim No. 1151, computed in a different manner. Claimant's evidence showed the amount to be reduced to $5,712.89 on a later computation. In finding No. VIII, he further stated:
"As to claimant's Claim No. 1151, the court finds that there was nothing upon which interest could be calculated or fastened and therefore such claim must be disallowed in its entirety."
The referee was thus in effect saying that interest as an independent item is not recoverable in bankruptcythat it can only be recovered where it is claimed incident to principal claimed.
Claim No. 1151 did not seek recovery of any principal whatever based on the old account; nor was any claim made in No. 72 for the old account. It is clear, therefore, that the claim in question is for interest as such.
Section 63 of the Bankruptcy Act, Title 11 U.S.C. § 103 provides for the kind of debts which may be proved in bankruptcy proceedings. There is no reference to interest provable as a debt standing alone. Section 63, sub. a(1) provides for claims based on a "fixed liability * * * absolutely owing at the time of filing of the petition * * * with any interest thereon." Section 63, sub. a(5) provides for "provable debts reduced to judgments after the filing of the petition and before the consideration of the bankrupt's application for a discharge, less costs incurred and interest accrued after the filing of the petition and up to the time of entry of such judgments." Thus the act provides for a cut off of interest after the filing of the petition and allows interest on other claims as accrued until the date. This, however, clearly contemplates a debt independent of interest.
It is generally conceded that the philosophy of the act is to make it possible for creditors to receive a pro rata share of the estate in satisfaction or partial satisfaction of substantive claims. Normally the estate is insufficient to pay off the principal. Interest is for this reason of less importance. Collier on Bankruptcy, ¶ 63.16.
It is concluded that the referee did not err in refusing to allow Mountain Iron's claim for interest on the "old" account.
The cause must be remanded for further proceedings in accordance with the comments which appear above. It is, therefore,
ORDERED that the order of the referee be reversed and that the cause be remanded for further evaluation of the evidence, for the taking of additional *541 evidence, for reconsideration of offers of proof made by claimant and such other proceedings as the referee deems necessary in order to carry out the determinations contained herein.

VALLEY STEEL PRODUCTS COMPANY
The question certified to this Court is:
"Did the Referee err, upon the evidence before him, and the applicable law of Oklahoma, in finding and concluding that the claim (No 429) for $33,124.82, filed by Valley Steel Products Co., was entitled to security only to the extent of $6,871.13, and entering orders accordingly?"
Valley Steel, like many other creditors involved in this matter, had a running account to furnish material and supplies to the bankrupt. These materials (casing and tubing) were furnished for use upon particularly described leases. (The Lucas "B" Lease No. 23, the Bert Lucas Lease, No. 24 and the Lucas Gallery Lease, No. 25) Within the time allowed, Valley Steel filed a lien statement addressed to the leases to which materials had been delivered or furnished. It later developed that much of this material was diverted to leases not covered by Valley Steel's lien statement and some was placed in a warehouse and pipeyard which has become known as Trustee's Item No. 40.
The Trustee's finding Number II is here questioned. It reads:
"The materials and supplies were furnished under an oral contract entered into between the bankrupt through his agent Eugene V. Smith and the claimant, and was a continuous open account constituting a single contract to furnish materials for use on leases commonly known to these proceedings as the Lucas `B' Lease, No. 23, the Bert Lucas Lease, No. 24, and the Lucas-Gallery Lease, No. 25; that some portion of the materials so supplied was actually used by the bankrupt on the said three leases; that some portion was actually used on leases located in the adjoining Section 17; that a portion thereof was in warehouse and pipeyard located on Lucas-Bechtol Lease, No. 39, in Section 17, which originally cost $7,637.60, at the time of sale of all of the property to Sunray Mid-Continent Oil Company, and was actually sold to that company as a part of the personal property in warehouse and pipeyard commonly known to this proceedings as Trustee's Item No. 40."
Finding Number III of the referee is as follows:
"That Claim No. 429 is allowable for $33,124.82; that claimant is entitled to the security of its mechanic's lien No. 6132 filed February 5, 1960, in the office of the Clerk of the District Court in Washington County, Oklahoma, on the properties described in its amendment to Lien Statement which properties are hereinbelow described in detail, to the extent of $6,871.13; that the balance of the allowed claim is unsecured."
In Conclusion II the referee held:
"Where material and supplies are supplied under contract with the owner on a continuous open account, to a number of oil leases operated as a unit for the purpose of receiving and storing oil, and owned and operated by the same individual, such open account constitutes a single contract, and a single lien statement, filed within four months after the last material was furnished, covering all of the leases to which any item of material was furnished, creates a valid and enforceable lien upon all of such leases to the extent of the material shown to have been delivered to and used thereon, but not to the extent of the entire account where it appears that a substantial portion of the material furnished was not used upon such leases, or any of them."
*542 Valley Steel's contention is that its claim should be secured to the extent of $33,124.82, rather than limited to the materials which were found to have been actually used on the leases covered by the lien statement, $6,871.13. Their position is based upon the wording of the applicable statute, 42 Okl.Stat.Ann. § 144, the essential part of which is set out below, with emphasis added to words which Valley Steel considers important:
"Any person, corporation or copartnership who shall under contract, * * * with the owner of any lease-hold * * *, perform labor or furnish material, machinery and oil well supplies used in the digging, drilling, * * * of any oil or gas well, or who shall furnish any oil or gas well supplies, or perform any labor in constructing or putting together any of the machinery used in drilling * * *, shall have a lien upon the whole of such lease-hold * * *, the buildings and appurtenances, and upon the material and supplies so furnished, and upon any oil well supplies, tools, and other articles used in digging, drilling * * *, and upon the oil or gas well for which they were furnished, and upon all the other oil or gas wells, fixtures and appliances used in operating for oil and gas purposes upon the lease-hold for which said materials and supplies were furnished * * *. Such lien shall be preferred to all other liens * * * upon said lease-hold * *, or such oil and gas wells and the material and machinery so furnished and the lease-hold * * * and appliances thereon subsequent to the commencement of or the furnishing or the putting up of any such machinery or supplies; and such lien shall follow said property * * * and be enforceable against the said property wherever the same may be found; and compliance with the provisions of this article shall constitute constructive notice of the lien claimant's lien to all purchasers and encumbrancers of said property or any part thereof, subsequent to the date of the furnishing of the first item of material * * *."
The frequent use of the word "furnished" in the statute is the important aspect. It is its contention that since $33,124.82 worth of materials were actually furnished to the leases covered by this lien statement, they thereby have a secured lien for $33,124.82 on those leases, as well as a prior lien on the furnished material which is no longer on the described leases.
It would appear from a careful study of the first portion that a lien will apply if furnished materials are used in the drilling, or operation of the lease.
McEwen Manufacturing Co. v. Anadarko Producers' Gas and Oil Co., 115 Okl. 127, 241 P. 493 (1925) holds that the material must be not only delivered to the lease but must be also used on the lease in order for the supplier to claim a lien on the leasehold. In McEwen, the creditor sought to apply the oil and gas lien statute to material furnished to a gas distributing system in a municipality. At page 494 of 241 P. of the opinion (with emphasis added):
"The statute relied on by the plaintiff, section 7464, supra, contemplates the improvement of an oil and gas lease by furnishing labor or material used in digging, drilling, torpedoing, operating, completing, or repairing of an oil and gas well or for the construction or putting together of machinery used for such purpose.
* * * * * *
"It will be observed that these recent cases, while not arising upon the facts of the instant case, construe the statute in question as contemplating that the labor and material for which the lien may be had must be applied in the improvement of the lease or in some manner connected with the operation of an oil and gas well."
*543 See also Taylor v. B. B. & G. Oil Co., 207 Okl. 288, 249 P.2d 430. In Fox Rig Co. v. Bell, 128 Okl. 300, 263 P. 119, 120 (1928), the court discussed the extent to which a supplier must go in order to prove that the delivered material was used on the lease.
"It is contended by appellants that the evidence fails to establish that the material and supplies for which a lien was allowed said supply company were furnished and used by said defendant Bell in drilling the well on the lease in question. It is true that the supply company was not able to positively identify each and every item as being used on this particular lease, but the evidence is that a large portion of the material was actually identified as being on the lease, and the evidence further establishes that all material and supplies for which this lien was allowed were, in fact, sold and delivered to the defendant Bell with the understanding that the same were to be used in the drilling of said well.
"At the trial of the case, it was conceded by the supply company that a portion of the material included in the lien statement as originally filed was furnished to defendant Bell for the development of leases in other localities. At the trial, the items in this lien statement were checked by a representative of the plaintiff and a representative of the supply company, and the testimony is to the effect that all doubtful items included in the statement were discarded and the lien claim thus reduced to the sum of $16,324.67.
* * * * * *
"There was offered no testimony tending to show that any of the material and supplies for which the lien was allowed were not, in fact, used in connection with the drilling of the well on this lease. * * *"
In the case at bar it was established that much of the material delivered to the leases involved was not, in fact, used on those leases. Thus, Valley Steel has not met the standard of proof required by the Oklahoma Court to establish a materialmen's lien on the described leases.
This is far different from the situation which was shown to be present in Mountain Iron, discussed above. There the lien was applicable to the entire operation, whereas here the material was furnished for use on particular leases and the lien was addressed to those leases. In fact, the material was diverted to other leases. Therefore, the referee was correct in denying a secured right in respect to material which was shown to have been by the bankrupt diverted to leases outside the area of claim.
Turning now to Valley Steel's claim to a lien on that material which was in the warehouse (Item No. 40). As to this § 67, sub. c(2) of the Bankruptcy Act is controlling. The second portion of section 144 (the Oklahoma Oil and Gas lien statute) does provide that the lien is to follow "said property" wherever it may be found. However, this portion of the statute is in conflict with Section 67, sub. c(2) and under such circumstances the latter must prevail. 4 Collier on Bankruptcy 310 (14th ed. 1962) contains the following comment:
"The most important change in § 67(c) effected by the amendment of the Bankruptcy Act in 1952 was given but slight attention in the legislative reports which accompanied the measure. That change was the addition of clause (2), invalidating as against the trustee all statutory liens created or recognized by state law on personal property not accompanied by possession, levy, sequestration, or distraint. Its purpose has been explained, however by one who undoubtedly participated in the drafting, as a further implementation of the Chandler Act `to build up, as far as feasible and equitable, the residual fund for distribution among the general unsecured creditors.' It was further suggested *544 that it `should effectively check the growing trend in State statutes of labeling as `liens' what essentially are `priorities' and thereby seek to evade the scheme of priorities as set up in § 64a."
There has been no contention that Valley Steel had possession of the personal property in the warehouse. They argue that the last portion of the above-quoted statement from Collier does not apply to the type of lien involved here. It is clear, however, that § 67, sub. c(2) does control and upon that basis it must be determined and concluded that Valley Steel does not have a secured lien on any personal property in the warehouse designated as Item No. 40.
The referee's rulings are affirmed.

THE HALLIBURTON COMPANY
The questions here raised by claimant are as follows:
"1. Did the Referee err in denying the motion of The Halliburton Company for leave to amend its lien claim to include the properties described in its petition for review?
"2. Did the Referee err, upon the evidence before him, and the applicable law of Oklahoma, in finding, concluding and holding that The Halliburton Company was not entitled to assert a lien as security for its Claim (No. 151) on personal property described in the proceedings as Trustee's Item No. 40?"

1. The Request for Leave to Amend

Important in reviewing whether Halliburton should have been allowed to amend is that no such offer was made at the district court level in Washington County, Oklahoma. The first effort was made in the Bankruptcy Court at the close of all of the evidence. It was then contended that Halliburton was entitled to conform its pleadings to the evidence.
Also noteworthy is the fact that the original claims were pinpointed to specific leases. Materials were delivered to described leases (according to the invoices) for use on those leases, and proof established that at least some of the materials were used on the described leases. Now Halliburton maintains that the evidence indicates that some of the materials delivered were diverted to leases not described in their original claim nor in this court; and, by reason of the unit character of this operation, Halliburton should be entitled to assert the liens in this court. This contention must be rejected.
Unlike the Mountain Iron case, the claim was not asserted against the entire waterflood project. Moreover, Halliburton has not protected its rights at the mechanics' lien-filing level; nor did they attempt to claim a lien on the leases against which they are now seeking to apply a lien. Although they talk about a unit operation, they in no sense treated this as a unit operation. In view of this, its demand for amendment is not governed by considerations which were present in the Mountain Iron case.

2. The Assertion of Lien against Trustee's Item No. 40

This contention is fully and entirely governed by the principles which have been announced and applied in the Mountain Iron claim. Section 67, sub. c(2) of the Bankruptcy Act applies here, and upon consideration of that section there is no merit to the present demand of the claimant; it is, therefore,
ORDERED that the rulings of the Referee be, and the same are hereby affirmed.

SAUDER TANK CO., INC.
The Trustee here contends that the referee erred in allowing claimant to amend so as to specify particular leases whereas the original claim filed in Washington County, Oklahoma, had merely described the section within which the leases were located. The referee held that there was a right to amend in these circumstances and concluded that Sauder Tank Company was entitled to security in the amount of $2,962.32 of a total allowed claim of $3,543.76.
In line with the principles which have been announced in the Mountain Iron *545 case above, the holding of the referee was correct; it is, therefore,
ORDERED that judgment of the Referee should be, and the same is hereby affirmed.
NOTES
[1] "The undersigned, Rhine Petroleum Industries, hereby understands and agrees as follows:

"That effective June 5, 1959, Mountain Iron & Supply Company did approve the undersigned for credit and did open a credit line for same. The undersigned agrees that said credit line is for the purpose of equipping a water flood project known to the parties hereto as the water flood unit in Oklahoma. It is further agreed that the equipment purchased for said project will constitute a continuous contract and that Mountain Iron & Supply Company may look to the entire unit as one project and the equipment sold to be used thereon as being used on the entire flood project regardless of the description set forth on the counter charges. It is further agreed that Mountain Iron & Supply Company may legally file liens, if necessary, on the entire unit to secure all of the equipment sold to the undersigned. Said continuous contract and line of credit shall remain in effect until expressly revoked by Mountain Iron & Supply Company."
 "RHINE PETROLEUM
 INDUSTRIES
 "/s/ A. R. Rhine
 "A. R. Rhine"

[2] Title 42, Ch. 5, § 172: "* * * The practice, pleading and proceedings in such action shall conform to the rules prescribed by the code of civil procedure as far as the same may be applicable; and in case of action brought, any lien statement may be amended by leave of court in furtherance of justice as pleadings may be in any matter, except as to the amount claimed."
[3] Title 12, Ch. 8, § 317: "The court, may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding by adding or striking out the name of any party, or correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or conform the pleading or proceeding to the facts proved, when such amendment does not change substantially the claim or defense; and when any proceeding fails to conform, in any respect, to the provisions of this code, the court may permit the same to be made conformable thereto by amendment."
[4] Title 42, § 144, Oklahoma Statutes Annotated and § 142 of the same chapter.
[5] "Mountain Iron & Supply Company entered into an agreement with the bankrupt sometime in the summer of 1959 whereunder Mountain Iron was to supply materials and supplies needed for the operation of the leases in Sections 17 and 18, Township 28 North, Range 14 East, Washington County, Oklahoma, involved in these proceedings; the claimant delivered the goods and merchandise under the contract and for the purposes stated therein; they were incorporated into and used or intended to be incorporated into and used for the development of a secondary recovery project on the leases involved. At about this time and for this purpose a new account was opened on the books of the claimant for which the balance of $91,238.09 was asserted owing."