In re GEORGE RODMAN, INC., Debtor.

Thomas J. KENAN, Trustee.

Conoco, Inc., Plaintiff,

v.

GEORGE RODMAN, INC., and Grenard Service Company, et al., Defendants.

Bankruptcy No. 82–02132–A.
Adv. No. 83–0755.

United States Bankruptcy Court,
W.D. Oklahoma.

March 14, 1984.

Thaddeus Freeman and W. Rogers Abbott II, Oklahoma City, Okl., for Grenard Service Co.

Thomas J. Kenan, trustee and Gary L. Morrissey, attorney, Oklahoma City, Okl., for George Rodman, Inc.

## MEMORANDUM DECISION AND ORDER

RICHARD L. BOHANON, Bankruptcy Judge.

We are again asked to interpret provisions of Oklahoma's oil and gas lien statutes for purposes of administration of this bankruptcy estate. The issue for determination is a narrow one and in the most elementary terms is a question of when the statutory four month period for filing a lien statement runs as to a supplier of labor or material under contract to service multiple leases. The facts which follow will place the issue in its proper context. We find the case to be one of first impression in this jurisdiction.

The trustee seeks to invalidate certain liens filed against several oil and gas wells due to non-compliance by the lienor with relevant state statutes governing mechanics liens. Grenard Service Company en-

tered into an oral contract[1] with the debtor to provide fluid hauling and related services to various oil and gas properties operated by the debtor. These services were provided from the period October 31, 1981 through the date of filing the petition in bankruptcy, and Grenard currently provides limited services.

Under the arrangement with the debtor Grenard hauled fluids for several leases and submitted one monthly statement. The 4 month perfection period expired for all but one of the leases. Within the filing time for the last lease Grenard filed its statements against *all* the leases for which it had provided services. Its argument is that since its work was performed under a single contract it can perfect upon all the leases within 4 months of the time it last did work on any of them. Grenard does not dispute that these lien claims were filed beyond the four month period from which services were last provided, but forcefully argues the contract controls the scope of the liens and commencement of the 4 month period. Consequently, it urges that all the lien claims may be melded into one comprehensive lien under the contract. Thus, this theory would validate any out-of-time lien claim since there is an open and running account to which the 4 month period would be reoccurring and applicable to all leases whenever services are performed on any lease. This theory assumes the contract goes to all the debtor's leases rather than one for providing services upon all leases for which the debtor may desire work. Moreover, it proposes that defects as to the filing of lien claims within the statutory period on some leases may be cured at any time by the proper filing of liens on other leases when a lienor has a

running account[2] with an operator and a standing agreement to provide services on present or future leases. We will analyze these assumptions and set forth why such propositions go too far and must therefore be rejected.

There are two relevant statutes[3] which are necessary for our determination of the question presented. The first, 42 O.S.1981 § 144 allows for the oil and gas well lien in this state. It reads in pertinent part:

> "Any person [or] corporation who shall, under contract, expressed or implied, with the owner of any lease hold for oil and gas purposes, ... perform labor or services ... shall have a lien upon the whole of *such leasehold* ... and upon *the oil or gas well* for which they were furnished ...." (emphasis added)

The second statute, 42 O.S.1981 § 142, provides the mechanics for perfecting oil and gas liens and reads in pertinent part:

> Any person claiming a lien as aforesaid shall file in the office of the county clerk of the county in which the land is situated a statement setting forth the amount claimed and the items thereof as nearly as practicable, the names of the owner, the contractor, the claimant, and a legal description of the property subject to the lien, verified by affidavit. Such statement shall be filed within four (4) months after the date upon which material or equipment used *on said land* was last furnished or *labor last performed under contract as aforesaid* ....[4] (emphasis added)

We first note that Oklahoma's lien statutes are to be liberally construed to effect the purpose of the law once perfec-

---

1. The contract to perform services on the wells of the debtor was oral. However, certain finance terms, account information and reference to the continuous nature of the agreement are on the written invoices submitted for each job.

2. The debtor does not dispute that the parties had an open and running account under the oral contract.

3. It is noted also that pursuant to 11 U.S.C. § 108(c) Grenard's statutory time for prosecut-

ing its foreclosure action under 42 O.S.1981 § 146 (Supp.1983) has been suspended.

4. It may be instructive that the legislature amended the language of this statute in 1980 from reading "date upon which material was last furnished or labor last performed under contract ..." to the present terms "date upon which material or equipment used on said land was last furnished or labor last performed under contract ..."

tion has occurred; but such lien statutes, being in derogation of common law, are strictly construed when determining whether the statutory provisions have been satisfied. *Matter of Mahan & Rowsey, Inc.*, 27 B.R. 883 (Bkrtcy.W.D.Okl.1983); *Bovasso v. Sample*, 649 P.2d 521 (Okl.1982); *H.E. Leonhardt Lumber Co. v. Ed Wamble Distributing Co.*, 378 P.2d 771 (Okl.1963). The trustee in bankruptcy acts as a hypothetical third party lien creditor and may properly contest the validity of these liens. *See In re Rhine*, 213 F.Supp. 527 (D.Colo.1963); 11 U.S.C. § 544.

Grenard argues that it is not required to perfect its liens on an individual lease basis within the 4 months and the Court should focus on the continuing nature of the contract between the parties. For this proposition it relies extensively on the holding in *William M. Graham Oil & Gas Co. v. Oil Well Supply Co.*, 128 Okla. 201, 264 P. 591, 596 (1928). However, upon reviewing the facts in *Graham* we find Grenard's reliance thereon is misplaced for our purposes here. The Grahams were owners of several leaseholds and for the purpose of development of these leases a line of credit was established with suppliers. The Grahams encountered financial difficulty and eventually several creditors filed statutory liens and brought suit to foreclose on their accounts. The several cases were consolidated under the cause filed by Oil Well Supply Company and the Court, due to the like origin and character of the accounts and applicable legal principles, selected from among the various accounts the representative case of Frick-Reid Supply Company. The question insofar as the Frick-Reid lien claim, as well as all other account creditors, was whether each purchase of supplies constituted a separate and independent transaction thereby requiring the filing of a lien within 4 months of each purchase. The alternative theory and holding by the court was that the course of dealing between the Grahams and their creditors constituted a single transaction and that a lien filed within 4 months of the last purchase relates back under the contract to the entire account. *See Graham,*

*supra,* 128 Okl. at 206, 264 P. at 595. The court properly noted, and the rule remains the same today that

> when material is furnished, to be used for the same general purpose ... though the materials be ordered and furnished at different times, yet, if the separate parts form an entire whole and are so connected as to show that the parties intended that they should form one complete transaction, and that they should constitute one account, then the entire transaction constitutes a single contract, and that, by virtue of the rule, a lien statement, filed within the statutory period of the last purchase date will sustain a lien for the entire period of the account. *Graham, supra* at 128 Okl. 207, 264 P. at 596. (citations omitted)

The rule in *Graham* has not been challenged by the trustee in the instant proceeding nor do we question it here since the law is well settled. An open and running account would allow a lienor to obtain lien rights for all material provided to a lease commencing with the first delivery to the most recent so long as the lien statement is filed within the 4 month period following the last delivery. *See Atlas Supply Co. v. Bank of Commerce of Okmulgee*, 101 Okl. 57, 223 P. 159 (1924). In other words, the rule in *Graham* provides that a creditor is entitled to a lien for all material delivered to a lease on an open account and is not limited to a lien for material supplied four months previous to its lien claim. But the rule in *Graham* has no application here and the other cases cited by Grenard are equally inapposite.

While it is true that in *Graham*, Frick-Reid, as well as other creditors, provided material to multiple leases owned by the Grahams it must be noted that liens were filed against all such leases within the statutory filing period. Having properly filed the liens the only issue was *how much* of the material supplied would be covered by the lien. Accordingly, the *Graham* case is distinguishable on its facts from the case at bar and adds nothing to Grenard's argument. Since Grenard failed to comply with

the statutory time period for filing lien claims on the contested wells, we never reach the rule enunciated in *Graham*.

Reference to cases in other jurisdictions sheds some light on the issue before us although we find no cases directly on point. In *Dunigan Tool & Supply Company v. Burris*, 427 S.W.2d 341 (Tex.Civ.App.1968), the court was faced with facts similar to those here. A supplier of oil field material brought suit against a drilling contractor and owner of three leaseholds for the value of supplies sold. One well was drilled on each of three subdivisions of a base oil and gas lease. The plaintiff contended that since the three leasehold interests were owned by the defendant that his lien rights for material and supplies furnished to any one of the three tracts is effective against all three tracts.

However, the Court disagreed stating "[t]he lien exists, however, only upon the tract, leasehold interest or unit upon which the material was furnished or used." *Id.* at 344. Applying this reasoning to the instant proceeding, if the lien exists as to only one lease it would be impossible to tack on to it in order to perfect a lien against a separate leasehold.

In *Big Six Oil Co. v. West*, 136 S.W.2d 950 (Tex.Civ.App.1940), Big Six Oil Company owned two leases and had contracted with a lienor to perform maintenance services on wells situated on these two leases. After the cleaning work was done the lienor was not paid for the amount claimed and subsequently brought suit to foreclose upon statutory liens not only on the two leases where the wells were located, but also prayed for a foreclosure of his lien on all leases owned by the oil company. Pertinent for our consideration here the lower court granted the lienor a lien on both leases for the lump sum due and owing under the contract. This was reversed on appeal with the Court noting "the lien ... attaches only to the particular lease on which the particular work was done and the material, etc., furnished, and that such lien attaches only to secure the value of such labor, materials, etc., done and fur-

nished on that particular lease." *Id.* at 953. Thus, this case implies that perfection of a lien on oil and gas leases must be done on an individual lease basis and no blanket lien may obtain against all the leases under a contract theory.

Finally, we would distinguish two cases which may appear to support Grenard's position asserted herein. In *In re Rhine*, 213 F.Supp. 527 (D.Colo.1963), the court stated "[t]he lien claimant may assert his lien against all of the properties where as here the materials have been furnished in connection with a suit operation or project." *Id.* at 538. In the first instance we do not read the terms "unit operation" or "project" to mean multiple oil well leases are transformed into an indistinguishable unit for lien perfection purposes simply because a supplier or laborer may have a standing contract with the owner to service his leases. Secondly, this case does not reach the question before us which is one of perfection of a lien and not what properties the lien may be asserted against.

In *Adair v. Transcontinental Oil Company*, 184 Kan. 454, 338 P.2d 79 (1959) the court stated that "where a number of leases are operated as a single unit and materials are supplied or labor performed under a single contract ... a single lien statement timely filed creates a valid and enforceable lien upon all such leases which may be sold to satisfy the lien." *Id.* 338 P.2d at 92. But again, as in *In re Rhine*, the court points out that the leases must be operated as a single unit. In the instant proceeding the leases were not operated as a single unit. No provision or agreement among the various entities infers that the leases were to be looked upon as a single unit. Indeed, the leases at issues are scattered with some leases being located in different counties. Therefore, not only are the leases noncontiguous, but to view them as a "unit" would be unreasonable and impracticable. Accordingly, *Adair* is distinguishable from the instant case for the same reasons that *Rhine* has been shown inapplicable.

We also think there are some very practical reasons why Grenard's theory must fail. We noted in *Matter of Mahan & Rowsey, Inc., supra,* that the purpose of the mechanic's and materialmen's lien statutes was not only to protect materialmen and laborers, but also to give due notice to third parties of lien claims. As such, the purpose of the lien statutes would not be served should we now allow a lien to attach and be perfected as to third parties under a blanket lien contract theory where lien statements have not been filed within the statutory period. The prospect of allowing these "invisible liens" on leases due to a supplier having a contract with the operator does violence to the notice concept of our lien laws. To hold otherwise places in jeopardy third parties who may deal with the properties involved but have no notice of the claim for debt and the lien securing the same. *See Simon v. Post Oak Oil Co.,* 153 S.W.2d 1002 (Tex.Civ.App.1941).

Also, where there are several and distinct leases it is not unreasonable to assume that their value would be different. Consequently, the third party seeking to deal with the owner needs to have the specific information contemplated by the lien statutes of claims made against the value of specific leases. This information encourages commercial flow and allows the opportunity for sound business judgments by a party considering dealing with the owner.

Accordingly, for all the reasons set out above we reject the theory advanced by Grenard; and hold that lien statements filed outside the statutory period are invalid as to the Trustee, and a lien statement filed as to one property may not validate lien claims against other leases which are filed out of time. Therefore, the cross-complaint shall be and hereby is granted in favor of the Trustee and an appropriate judgment will be entered.

Pursuant to Fed.R.Bankr.P. 7052 the above constitutes the findings of fact and conclusions of law.