## NEVES v. MILLS.

No. S980—Opinion Filed May 28, 1918.

Rehearing Denied Dec. 3, 1918.

(176 Pac. 509.)

**1. Mechanics' Liens—Time for Filing—Notice—Subcontractor.**

While the law providing for a materialman's lien should be liberally construed to effectuate the object of the law, it is a condition precedent to the establishment of such lien that the proper lien statement be filed with the clerk of the proper district court, within the time provided by section 3863, Rev. Laws 1910, if the party seeking the lien be an original contractor, and within the time provided by section 3864, Rev. Laws 1910, if the party seeking the lien be a subcontractor; and such subcontractor must also give notice of the filing of such lien statement to the owner. Following Bryan et al. v. Orient Lumber & Coal Co., 55 Okla. 370, 156 Pac. 897.

**2. Mechanics' Liens — Foreclosure—Attorneys' Fees—Determination.**

Where the plaintiff prays in his petition for the allowance of a reasonable attorney's fee, under section 3877, Rev. Laws 1910, naming the amount thereof, and the defendant in his answer prays for a reasonable attorney's fee in the same sum, the pleadings make no issue on the question of the allowance of an attorney's fee or the amount thereof, and there is no occasion for testimony upon this subject, and the court may allow a reasonable attorney's fee to the prevailing party. not exceeding the amount so agreed upon, taxing the same as cost, and fix the amount thereof without further evidence.

(Syllabus by Galbraith, C.)

Error from District Court, Tulsa County; T. P. Clay, Assigned Judge.

Action by T. L. Neves against S. B. Mills. Judgment for the defendant, and plaintiff brings error. **Affirmed.**

Robinson & Mieher, for plaintiff in error.

Geo. T. Brown, for defendant in error.

Opinion by GALBRAITH, C. Neves, a lumber dealer, commenced this action in the court below against Mills, the owner of lot 5, block 6, in Crosbie Heights addition to the city of Tulsa, for the balance due on an account for lumber and material sold to W. M. Crutchfield, a contractor, for use in a building erected upon said lot, alleging that Crutchfield acted as the agent of the owner in the purchase of said material, and to foreclose a materialman's lien against the lot and the improvements thereon for the amount of said account and costs.

The answer denied the agency of Crutchfield and denied liability for the account and the right to a lien. A jury was impaneled to try the case. At the close of the plaintiff's evidence, the defendant interposed a demurrer thereto, which was by the court sustained. The court thereupon instructed the jury to return a verdict for the defendant, which was done, and upon motion of the attorney for the defendant the court assessed, as cost, an attorney's fee in the amount of $55, and judgment was rendered against the plaintiff below for the court costs and such attorney's fee.

To review that judgment this appeal was perfected.

The errors assigned are to sustaining the demurrer to the evidence and instructing and entering judgment for the defendant, and also in taxing an attorney's fee without evidence as to what was a reasonable attorney's fee in the case.

The material part of the plaintiff's evidence which it is claimed tends to establish the agency alleged in the petition is as follows, and is the testimony of C. B. Sleeper, the lumber salesman:

"Q. Do you recall during the summer of 1914 of Mr. Neves having any dealings relative to the building of a house for Mr. Mills? A. Yes, sir.

"Q. Just state what those dealings were. (Objected to. Objections overruled.) A. Mr. Crutchfield came down to the yard and figured a lumber bill, and we figured it up for him, and he said that we could have it. (Objected to. Objection overruled.)

"Q. When and where was that? A. At the lumber yard, Second and Greenwood, Tulsa.

"Q. When, with reference to the time of the starting of the house? A. Yes, sir.

"Q. I say when was it with reference to the starting of the house? A. Before any of the lumber had gone out.

"Q. Was that before or after they had made their contract? (Objected to.)

"The Court: You better ask him whether he knows anything about that or not.

"Q. Do you know whether they had a contract at that time? A. You mean who had a contract?

"Q. Mills and Crutchfield. A. Yes, sir.

"Q. Go ahead and state. He said that this lumber was for Mr. Mills? (Objected to. Objections overruled .) A. So we asked Mr. Crutchfield where we could find Mr. Mills.

"Mr. Brown: State who you mean by 'we.' if you will, please. A. Both of us were there in the office together.

"Q. Who were 'both of us'? A. Mr. Neves and myself. I always took up that part of the business, and he told us that we could find him at the Democrat office. So that day we were busy, and I didn't go up, I believe, for about two days; and I went up to see Mr. Mills, and I says, 'Now, Mr. Crutchfield has bought some lumber for you out there where you are building the house.' And he says, 'That is all right.' He says, 'What do you know about Mr. Crutchfield?' I says. 'So far as I know, he is a good. straight man.' And then he stopped, he got busy, and went on with his printing. He was upstairs at the Democrat office.

"Q. Was the lumber then sent out? A. Some of the lumber; yes, sir.

"Q. Was it sent out following that time? A. Yes, sir: the most of it was sent out following that time.

"Q. When did you next see Mr. Mills or have any talk with him regarding the matter? A. Then, after the lumber bill, Mr. Crutchfield came down and asked us to itemize his statement, his bill. We itemized it and gave it to Mr. Crutchfield to O. K. and give to Mr. Mills. About two days after that, I went up with another statement which showed his balance so much, to Mr. Mills. and I asked him if he had got the statement from Mr. Crutchfield, and he said he hadn't, that he wanted to talk it over with Mr. Crutchfield; and that was all that was said at that time."

There was other testimony relative to the negotiation between the plaintiff and the defendant and the contractor subsequent to the completion of the house, in an attempt to make settlement of the account; but the above is all the testimony by which it was sought to prove that the contractor was the agent for the owner, except, possibly, the building contract between the owner and

the contractor for the erection of the house on the lot, which was introduced in evidence by the plaintiff. This contract showed that the contractor. Crutchfield, agreed with the owner. Mills, to erect a house according to certain plans and specifications, for a specified sum, and enumerated periods for the payment of the agreed price, as the work on the building progressed, but did not authorize the contractor to act as the agent of the owner in purchasing material for the building.

The court below in sustaining the demurrer to the evidence held that there was nothing in the testimony which tended to show that the contractor was acting as agent for the owner of the premises in purchasing this lumber from Neves. The evidence in its most favorable view for the plaintiff, and the view which the court doubtless took in considering the demurrer thereto, shows that the lumber was sold to the contractor; that Neves notified the owner of the land of the sale of the lumber, thus establishing Neves' status as a subcontractor. Under the statute, as a subcontractor he had a right to establish and enforce a lien on the lot and the building thereon for the amount of the lumber sold and delivered to the contractor, provided he complied with the provision of the statute authorizing such lien. The evidence failed to show that the plaintiff filed a lien statement within 60 days after the last item of material on the account had been furnished, if he ever filed such statement; there being no evidence of the filing of the lien statement whatever. The plaintiff thereby lost his right to a lien as a subcontractor, and there was no evidence tending to prove the agency of Crutchfield for Mills, the owner, so as to establish his status as an original contractor and to allow his lien statement to be filed within four months, under section 3863, Rev. Laws 1910.

The first paragraph of the syllabus of Bryan et al. v. Orient Lumber & Coal Company, 55 Okla. 370, 156 Pac. 897, announces the established rule governing this subject, as follows:

"While the law providing for a materialman's lien should be liberally construed to effectuate the object of the law, it is a condition precedent to the establishment of such lien that the proper lien statement be filed with the clerk of the proper district court within the time provided by section 3863, Rev. Laws 1910, if the party seeking the lien be an original contractor, and within the time provided by section 3864, Rev. Laws 1910, if the party seeking the lien be a subcontractor; and such subcontractor must also give notice of the filing of such lien statement to the owner."

Under the evidence, Neves was a subcontractor. and, inasmuch as he does not contend that he filed a lien statement within 60 days after the last item of material in his account was furnished he failed to establish his right to a lien, and therefore the demurrer to the evidence was properly sustained.

Again, it is contended that it was error for the court to render judgment, under section 3877, Rev. Laws 1910, in the amount of 10 per cent. of the account sued for, as a reasonable attorney's fee, and in taxing the same as cost, for the reason that there was no evidence offered on the question as to what was a reasonable attorney's fee in the cause. Holland Banking Co. v. Dicks, 67 Okla. 228, 170 Pac. 253, is cited in support of this contention. The instant case is easily distinguishable from the Holland Banking Co. Case, in this, that in the instant case the plaintiff in his petition asks for a reasonable attorney's fee in the sum of $100 in addition to the amount of the account in suit, and the defendant in his answer prayed for judgment in the sum of $100 as reasonable attorney's fee to be allowed under the same statute. It therefore appears that there was no issue in this case as to the attorney's fee or the amount thereof, since both parties prayed for a reasonable attorney's fee and fixed the amount in the same sum. There being no issue upon this question, there was no occasion for offering testimony in support of it. Testimony is necessary only upon controverted questions. When there is no controversy about a fact or a thing, and there is no controversy when it is asserted by both plaintiff and defendant, what is the occasion for proof, and why may not the court accept such fact or thing as established without proof? We hold that he may do so.

Wherefore, we conclude that the judgment appealed from should be affirmed.

By the Court: It is so ordered.