C. A. MELTON, F. A. Melton, and C. F. Adams, Plaintiffs in Error,

v.

QUALITY HOMES, Inc., a Corporation, Defendant in Error.

No. 37441.

Supreme Court of Oklahoma.

April 2, 1957.

Rehearing Denied June 11, 1957.

Leon J. York, and Raymond H. Moore, Stillwater, for plaintiffs in error.

Winfrey D. Houston, Stillwater, for defendant in error.

### PER CURIAM.

This action was commenced in the District Court of Payne County by the plaintiffs in error, as plaintiffs, against Quality Homes, Inc., a corporation, and another corporation not a party to this appeal.

Plaintiffs' petition, filed on the 20th day of November, 1955, sought to quiet their title to Lot 10, Block 12, McFarland Heights Addition to the City of Stillwater. The main purpose of the action was to cancel certain specific and separate materialman's liens that had been filed against the property by the two defendants, respectively. The defendant, Quality Homes, Inc., filed its separate answer and cross-petition seeking, by its first cause of action, establishment and foreclosure of a materialman's lien in the sum of $1,990.93, against the above described property, and, by its second cause of action, establishment and foreclosure of a materialman's lien in the sum of $51.12 against Lot 9, Block 12,

of the same addition. Plaintiffs' answer to said defendant's first cause of action was in effect payment in full, and to said defendant's second cause of action, a denial that defendant had furnished any of the material for construction of plaintiffs' house on Lot 9, but if so, same was furnished on open account to the R. O. Fox Company, and first stored in that lumber company's yard, and was not sold to the contractor on the strength of plaintiffs' credit. Defendant replied by general denial and specific allegations of the receipt of a certain check of plaintiffs in the sum of $2,000, which it applied to the account of materials furnished to Lot 9, Block 12, and specifically denied that it sold R. O. Fox Lumber Company any materials which went into the construction of plaintiffs' house on Lot 9, but as a sub-contractor sold said materials to R. O. Fox, plaintiffs' contractor, relying upon its status as a lien claimant.

At the conclusion of all the testimony, submitted to the trial court without a jury, the court made special findings of fact and conclusions of law, as follows:

"As between the plaintiffs and the defendant, Quality Homes, Inc., the Court finds from the evidence that a contract existed between Quality Homes, Inc., and R. O. Fox, the plaintiffs' contractor, so as to constitute the former a sub-contractor under 42 O.S. [1951 §] 143 as to the materials furnished on both lots 9 and 10, Block 12, involved in this case, and that the lien statements were filed as provided by law. The Court further finds that at the time of the delivery of the $2,000.00 check with the notation in regard to Lot 10, Block 12, the plaintiffs' contractor, R. O. Fox, directed that the same be applied on Lot 9, the older of the the two accounts. The Court is of the opinion, that for the intention, proposed to be conveyed by the notation on the check, to constitute the application of the $2,000.00 to a particular lot, it was necessary that such intention be communicated in some man-

ner to the supplier of the materials, and that the mere notation on the check was not sufficient, especially in view of the circumstances then existing and of the oral direction of plaintiffs' contractor to apply the same on Lot 9. (70 C.J.S., Payment, § 54, p. 260) and (40 Am.Jur. 795). * * *"

Thereupon, judgment was entered in favor of defendant, establishing its lien for material furnished in the building of a house upon Lot 10, Block 12, supra, in the sum of $1,640.70 plus $164.70 attorney's fees and court costs, and establishing its lien upon Lot 9, Block 12, supra, in the sum of $51.12 plus $5.11 attorney's fees and court costs.

After the overruling of their motion for a new trial plaintiffs perfected this appeal, contending that the trial court's judgment is contrary to the evidence and against the clear weight thereof.

While plaintiffs have separated their argument into four propositions, it all concerns defendant's application of plaintiffs' two-thousand-dollar check to payment for materials used in the construction of the house on Lot 9. They do not contend that payment has been made for such materials so used, but do contend that they had a right to direct the application of their money to the payment of a specific amount, by notation on the check, and that defendant was bound to so apply it.

Plaintiffs cite several cases wherein it was held that the materialman was required to apply the payments made by a contractor to the liquidation of the liens against the property of the owner who furnished the funds for such payments; also cases wherein it was held that a debtor owing more than one debt to a creditor, or a debt composed of several items, has the right to direct to which debt, or debts, or to which item of a single debt, and in what amounts, a payment made by him shall be applied. They cite as decisive of the question here involved, the case of Kubatzky v. Pittsburg Plate Glass Co., 119 Okl. 236, 249 P. 412, wherein it was held:

"Where P. with knowledge of the fact that K. is erecting two buildings, one on lands owned by K. and one on lands owned by T., and T. delivers to P. its check made direct to P., as payee, for a sum sufficient to pay all claims for materials furnished by P. for the erection of a building on T.'s lands, P. is required to credit the sum of said check against the charges on T.'s lands, irrespective of any direction as to the application of such sum by the contractor."

The facts in that case are not analogous to the instant case. There, as here, the payment was made by the property owner directly to the materialman who had furnished material to a contractor. However, in that case T. owned only the one lot upon which the contractor was building a building for him; and it there appeared that the materialman was aware of the purpose and source of the payment.

In those cases wherein this court has held that the seller of the materials must apply payment made by the owner against the seller's claim for materials furnished for the owner's building, the seller, with knowledge of the source of funds, applied same to the detriment of the owner, in liquidation of an account owed it by the contractor, for which it had no lien. No proposition of law is more universally recognized than that a debtor, in making payment to a creditor to whom he owes more than one debt may direct its application. However, no general rule applicable to every case could be adopted and adhered to, without producing great hardship. Men keep their accounts differently, and sometimes loosely; and scarcely any case arises which does not vary in one or more material circumstance from every other case. Justice to the parties would frequently require exceptions to any specific rule that might be adopted; and these exceptions would multiply with the ever-varying dealings and transactions of individuals, until at length the rule itself, and the particular

cases in which it could apply, would become exceptions.

■■■ The materialman's lien law is the creature of statute, and is to be construed so as to reasonably and fairly carry out its remedial intent. We may not ascertain the construction of a single provision of this law nor the legislative intent by its words alone. We must take all of its provisions and read them as a whole so that each provision will be in harmony with every other, and the remedial purposes of the law preserved. That purpose was to give, for the payment of his claim, the security of a lien on the building and land, to whomever furnishes material in the construction of said building, either by virtue of an agreement with, or by consent of, the owner of the land on which the building stands, or of some person having authority from, or acting for, such owner in procuring such materials, provided the claimant conforms to the requirements of statutory procedure.

The liens involved here fall within the second of the classes provided by statute, and, if valid, constitute statutory rights, deraigned through the agreement of the subcontractor with the main contractor. They are founded upon the subcontractor's having furnished materials to the contractor that have gone into owners' buildings. They are not based upon privity of contract between the owner and the subcontractor.

The record in the instant case discloses that plaintiffs owned two adjoining residential building lots on West 9th Avenue, Lots 9 and 10, Block 12, McFarland Heights Addition to the City of Stillwater; that they entered into a contract with one R. O. Fox, a building contractor, to construct a dwelling house on each of said lots; that the house on Lot 9 was started in May, 1955, and finished in October of that said year; that the house on Lot 10 was started in the latter part of July, 1955, and finished sometime later than the one on Lot 9; that Mr. Fox subcontracted with defendant to furnish structural, dimension, finish and siding lumber for both houses, and in each instance, the materials were delivered by defendant to the job side; that the materials furnished by defendant to Lot 9, cost $2,028, plus an additional amount of $51.12 for flooring delivered to the job on September 16, 1955; that the materials defendant furnished for the house on Lot 10, and used in its construction, amounted to $1,640.70; that the materials delivered to Lot 9 in the sum of $2,028 had stood in account on defendant's books for a period of approximately 90 days, and it was pressing the contractor for payment thereof; that on August 5, 1955, the contractor delivered to Mr. Herron, secretary-treasurer of defendant, a $2,000 check made by plaintiff, C. A. Melton, direct to defendant; that this check had notation thereon as follows, "In full on R. O. Fox Lbr. bill on Lot 10, Blk 12 McFarland Add."; that notwithstanding this notation, apparent on the face of the check, the defendant applied it to payment of the account standing against Lot 9, and defendant testified that he so applied it at the direction of the contractor; that at the time of the check's delivery to defendant the account for materials delivered to Lot 10, amounted to $1,551.74, which materials had been delivered to Lot 10 only five days prior thereto, and defendant had not rendered a bill therefor to plaintiffs' contractor; that after receipt of said check, defendant made additional deliveries of materials to Lot 10, the last one being on September 28, 1955; that in October, 1955, before defendant's lien rights had expired on either job, it contacted plaintiff, C. A. Melton, and demanded payment for its materials delivered to Lot 10. At that time Melton refused to make payment, but raised no objection to the manner in which defendant had applied the $2,000 check to the payment of the account standing against Lot 9 covering the materials, which, at the time of delivery of the check, had been used in plaintiffs' house and upon land owned by them.

■■■ The facts and circumstances shown do not create any equities in favor of plaintiffs. They were not in a position

to complain that defendant's application of their $2,000 check to the account for materials used in construction of their house on Lot 9, was in any way detrimental to them. They owned both lots and were building houses upon both, through one original contractor. Defendant had furnished the materials that went into the construction of both houses. The evidence on plaintiffs' behalf, is not sufficient to raise any presumption that a specific amount or fund had been appropriated to each of said lots for the construction of the house thereon at a definite contract price, or that defendant had such notice of any such fund as would require its application of the payment as directed by the notation on plaintiffs' check. While there might be cases so requiring, under the circumstances here, there is no privity of contract between the plaintiffs and the defendant, creating a debtor and creditor relationship, thereby authorizing the plaintiffs to direct the application of their payment. Too, we are inclined to view as the equivalent of ratification, plaintiffs' lack of objection to the manner in which defendant made application of their payment, when defendant made demand for payment prior to the expiration of its lien rights.

■ The trial court made special findings of fact, and in an equitable action, this court will not set aside the findings of the trial court unless it appears from the entire record that they are clearly against the weight of the evidence. Leland v. Oklahoma Const. Co., 176 Okl. 216, 55 P.2d 1013.

Judgment affirmed.

WELCH, C. J., CORN, V. C. J., and DAVISON, HALLEY, JOHNSON, WILLIAMS, BLACKBIRD and JACKSON, JJ., concur.

The Court acknowledges the aid of the Supreme Court Commissioners in the preparation of this opinion. After a tentative opinion was written by Commissioner Jean R. Reed, and approved by J. W. Crawford and James H. Nease, the cause was assigned to a Justice of this Court for examination and report to the Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.