**GADDIS–WALKER ELECTRIC COMPANY, INC., Appellee,**

v.

**PHILLIPS PETROLEUM COMPANY, a corporation, Appellant.**

**No. 46082.**

Court of Appeals of Oklahoma, Division 2.

March 5, 1974.

Rehearing Denied April 9, 1974.

Certiorari Denied Sept. 17, 1974.

Approved for Publication by Supreme Court Sept. 19, 1974.

James H. Harrod and Bennett Schlinke, Edmond, for appellee.

Lloyd G. Minter, Kenneth Heady, Bartlesville, and Edward J. Fauss, Oklahoma City, for appellant.

BRIGHTMIRE, Presiding Judge.

Phillips Petroleum Company, appellant, complains of the trial court foreclosing a mechanic's lien against its leasehold estate in a gasoline service station site, primarily because, says Phillips, no such lien was ever legally established by appellee. We agree and reverse the judgment appealed from.

In 1955 Phillips leased a lot from W. P. "Bill" Atkinson located in Midwest City, Oklahoma, on the southeast corner of Reno and Midwest Boulevard. The renewable 15-year lease was given Phillips to use for a gasoline service station facility to be built by the lessee. Basically the rental was one cent (1¢) on every gallon of gasoline sold on the premises.

Several years later Phillips decided to enlarge and remodel the station. For this purpose it contracted with B. J. Hise Construction Company to carry out the project. Hise in turn subcontracted certain electrical work out to appellee Gaddis-Walker Electric Company on March 7, 1969, for $3,850. Gaddis performed its subcontract in accord with what it knew to be Phillips' plans and specifications between October 1969 and February 11, 1970. By the latter date Gaddis discovered Hise was in financial difficulty and would not be able to pay as agreed. Consequently Gaddis requested Phillips' inspector to have his employer protect it against loss for the Hise default, but it received no affirmative response.

On February 20, 1970, Gaddis filed a mechanic's lien statement with the District Court Clerk of Oklahoma County, Oklahoma, to which was attached a supporting

affidavit executed by its estimator, Clifford Canary. The lien statement was on a standard printed form and recited that Gaddis "has a claim against B. J. Hise Construction Company for the sum of . . . $3,850.00 due it" for labor and material last furnished on February 11, 1970, "for and used on the building and premises owned by W.P. Atkinson, and described as follows to-wit: West 221.71 feet of Block 1 Atkinson Park Addition, a subdivision of part of the W½ Section 2, T11N, R2W, Oklahoma County, Oklahoma." This was followed by saying Gaddis "has and claims a lien upon said building and upon the said premises . . . to the amount of $3,850.00 . . . ." This statement was subscribed by the president of Gaddis who swore "the name of the owner . . . the description of the property upon which the lien is claimed . . . the account . . . are just, true, correct and unpaid."

Knowing all it did about the situation including the fact that Phillips was lessee of the property, Gaddis nonetheless neither named Phillips as an owner in the lien statement nor notified it of the filing. It remained for Atkinson to do the notifying and he did so by asking Phillips to clear the property of the claim in a March 19, 1970, letter.

Phillips did not, so on February 11, 1971, Gaddis filed this action against Hise, Phillips and the Atkinsons asking the court for a $3,850 judgment against Hise and by virtue of the lien statement to decree Gaddis has a first and prior lien on the land described in the statement "valid against any leasehold estate of Phillips Petroleum Company" and to foreclose the lien and sell the property to satisfy the judgment. Later appellee filed an "Amendment to Petition" alleging Phillips had both "constructive" and actual notice of filing the lien statement—the latter by reason of a letter from Atkinson on March 19, 1970.

Defendant's demurrer to the petition as amended based on inactionable allegations of fact was overruled. In its answer filed June 11, 1971, the oil company followed up a general denial with specifics. It insisted Gaddis had claimed a lien against the primary fee, it asserted none against Phillips' recorded leasehold estate because the lien statement did not name Phillips as an owner of subject premises nor did it claim a lien on the leasehold interest. Furthermore Gaddis did not timely serve notice of the lien claim filing on Phillips, it alleged.

The next month the subcontractor filed a "Second Amended Petition" which merely enlarged upon earlier allegations by referring to Phillips' leasehold estate in more detail and that the petroleum company "drew the plans and specifications" for the improvements in question. Taking this pleading as Gaddis' first attempt to assert a lien against its leasehold interest, Phillips' answer to it differed from its earlier one by pleading in bar the one-year statute of limitation period for bringing a lien foreclosure action prescribed in 42 O.S. 1971 § 172—the theory being that the second amended petition for the first time sought to assert and foreclose a lien on Phillips' leasehold estate and such an amendment consisted of an entirely new cause or claim not relatable back to the original petition filing with *ab initio* effectiveness.

On September 3, 1971, the trial court held a hearing on defendants Atkinsons' motion for summary judgment which, though overruled, specifically found "as a matter of law that the Plaintiff [Gaddis] has no lien on the real estate belonging to the Defendant Atkinson . . . ."

The cause was tried to the court July 10, 1972. After all parties had rested the court found that Gaddis had proved no basis for a lien against Atkinson's fee estate,[1] entered judgment for them, and took "un-

---

1. This ruling appears to be a correct one. Gaddis proved only that the lessor "authorized' construction of the service station by lessee. This is insufficient. Benton v. Hill, Okl., 389 P.2d 501 (1964); Deka Development Co. v. Fox. 170 Okl. 228, 39 P.2d 143 (1934).

der advisement" the "matters as to the other defendants." Legal briefs were submitted by the parties. Findings of fact and conclusions of law were filed by the court September 18, 1972, and a conforming judgment entered nine days later which (1) granted Gaddis judgment against Hise for $3,850 and $1,500 attorney fees; (2) established and foreclosed a mechanic's lien for the amount of the Hise judgment against the leasehold estate of Phillips in subject property.

The petroleum giant assigns thirteen errors for review, all of which—save for one relating to attorney fees—in one way or another coalesce into a single ultimate contention, namely, Gaddis never perfected a lien against Phillips' leasehold interest. We agree. The trial court administered justice; we will apply the law.

■ At the close of the evidence the trial judge recited some eight "findings of fact" each of which squares with the clear weight of the evidence. So the problem lies not in the facts found but in a vital one remaining unfound—that is, absence of a reference in the lien statement to Phillips as an owner of subject realty or to any claim of a lien against its leasehold interest. These recitations must be included by virtue of the clear intendments of the statute providing Gaddis with lien rights—recitations which are conditions precedent to be met before a subcontractor can "obtain a lien upon such land, or improvements, or both." [2]

■ The basis for this conclusion is not difficult to explain. First of all a lessee of real property is an "owner" of it within the contemplation of the mechanic's lien law. Block v. Pearson, 19 Okl. 422, 91 P. 714 (1907). Perfection of a subcontractor's lien in regard to such an owner "will attach to whatever of interest, legal or equitable, the occupant may have." This the court in *Pearson* characterized as "sound in principle." The same day the *Pearson* opinion was filed—September 5, 1907—the Oklahoma Supreme Court speaking through a different Justice handed down another opinion on the same point in Crutcher v. Block, 19 Okl. 246, 91 P. 895

2. 42 O.S.1971 § 143 reads:

"Any person who shall furnish any such material or perform such labor as a subcontractor, or as an artisan or day laborer in the employ of the contractor, may obtain a lien upon such land, or improvements, or both, from the same time, in the same manner, and to the same extent as the original contractor, for the amount due him for such material and labor; and any artisan or day laborer in the employ of, and any person furnishing material to, such subcontractor may obtain a lien upon such land, or improvements, or both, for the same time, in the same manner, and to the same extent as the subcontractor, for the amount due him for such material and labor, by filing with the clerk of the district court of the county in which the land is situated, within ninety (90) days after the date upon which material was last furnished or labor last performed under such subcontract, a statement, verified by affidavit, setting forth the amount due from the contractor to the claimant, and the items thereof, as nearly as practicable, the name of the owner, the name of the contractor, the name of the claimant, and a description of the property upon which a lien is claimed; and by serving a notice in writing of the filing of such lien upon the owner of the land, or improvements, or both; provided that, if with due diligence the owner cannot be found in the county where the land is situated, the claimant, after filing an affidavit setting forth such facts, may serve a copy of such statement upon the occupant of the land, or the occupant of the improvements, as the case may be; or, if the same be unoccupied, he may post such copy in a conspicuous place upon the land or any building thereon. Immediately upon the filing of such statement the clerk of the district court shall enter a record of the same in the docket provided for in the preceding section, and in the manner therein specified. Provided further, that the owner of any land affected by such lien shall not thereby become liable to any claimant for any greater amount than he contracted to pay the original contractor. The risk of all payments made to the original contractor shall be upon such owner until the expiration of the ninety (90) days herein specified, and no owner shall be liable to an action by such contractor until the expiration of said ninety (90) days, and such owner may pay such subcontractor the amount due him from such contractor for such labor and material, and the amount so paid shall be held and deemed a payment of said amount to the original contractor."

(1907). Neither case referred to the other and interestingly enough both reached the same ultimate conclusion via entirely different authoritative routes. Said the court in *Crutcher*—a case involving enforcement of a materialman's lien against the lessee erector of a building—"it is not necessary that the person for whom a building is erected should own the fee-simple title, but the word 'owner,' as used in the [subcontractor's lien] statute, includes every character of title, whether legal or equitable, fee-simple or leasehold."

Since Phillips was an owner of subject land and, as a matter of fact, the owner for whom the improvements were being made, the next question is was it necessary to name it as such on the lien statement?

We hold it was. The lien sought to be impressed by Gaddis is one solely of statutory creation. It is designed to afford laborers and materialmen secondary protection against loss if primary contractual rights prove ineffective. But to secure the statutory benefits its provisions must be substantially complied with.

Reduced to its simplest form § 143 provides that a subcontractor "may *obtain* a lien" upon the "land, or improvements, or both . . . in the same manner . . . [and] extent as the original contractor" for the amount due him for work done. How may he "obtain a lien"? By within 90 days after the last work done filing with the court clerk a verified statement setting forth (1) an itemized account of the amount due from the contractor; (2) the name of the owner of the property interest against which a lien is claimed; (3) the name of the contractor; (4) the name of the claimant; and (5) a description of the property upon which a lien is claimed. Written notice of this statement's filing shall be served upon the owner against whose estate or interest the lien is claimed.

Admittedly the Gaddis lien statement underlying this action did not name Phillips as an owner nor describe its property rights in the land, though the subcontractor's officials knew at the time it decided to "obtain" a lien that the electrical work had been done on improvements being made by Phillips as an occupying lessee of the land. The conduct of Gaddis in filing the type of statement it did with the knowledge it had, in not notifying Phillips itself of the filing, and in making the type of allegations it did in its initial petition suggests that it never intended to establish a lien against Phillips' interest until after it became apparent it likely could not establish one against the Atkinsons.

And certainly if we suppose a moment that Gaddis for some reason personal to its officials desired not to claim a lien against the estate of Phillips, this to be sure is its right—a desire it could satisfy by not naming Phillips and not describing lessee's property interest.

Failure of lien-claiming suppliers to name the owner of a 1/32 interest in an oil and gas leasehold estate in their lien statements was held fatal to the creation of a statutory lien upon such owner's property in Forry v. Brophy, 116 Okl. 99, 243 P. 506 (1926). We think this is a reasonable and natural construction of § 143. In situations where doubt exists as to the identity of all owners it probably would be a good idea to name everyone in the lien declaration appearing to have some recorded or possessory interest in the land and notify each of the filing to assure maximum collection potential.

Gaddis' response to this issue is that a literal interpretation of § 143 is uncalled for because the statute exists "to establish a simple procedure whereby any person or corporation supplying goods, services or labor to a particular contractor or owner of real property may have a fund or source of revenue . . . other than . . . the person or corporation with which he contracted" and that requiring a potential lien claimant to search records or otherwise try to ascertain property owners is unreasonable and contrary to legislative intent as expressed in 42 O.S.1971 §§ 152 & 153—statutes relating to funds held by any contractor or subcontractor owing to their

contractees, the relevancy of which to the issue at hand escapes us.

The statute, to be sure, should be liberally construed to effectuate its obvious entent and purpose, but in so doing we cannot amendatorily ignore the clearly stated conditions precedent to creating the lien it authorizes, the very first of which is the filing of a lien statement bearing the owner's name whose property is to be impressed with the claimed lien. Neves v. Mills, 74 Okl. 7, 176 P. 509 (1918). This is especially true in applying the statutory provisions to the facts of this case.

Plaintiff Gaddis' heavy reliance upon Frank Wheatley Indus., Inc. v. Owens-Corning Fiberglas Supply Div., Okl., 470 P.2d 986 (1970) is unjustified because it deals with issues irrelevant to the decisive ones raised in this appeal. The same thing is true of Knapp v. Arko Interstate Elec. Co., Okl., 448 P.2d 996 (1968); Benton v. Hill, Okl., 389 P.2d 501 (1964) and Blalack v. Hoshall's A & A Plumbing Co., Okl., 318 P.2d 878 (1957)—three other cases plaintiff cites.

We hold the subcontractor's failure to name Phillips as an owner and describe its estate in the lien statement prevented it from obtaining a lien against the oil company's leasehold interest. Therefore the trial court's judgment establishing and foreclosing such a lien against Phillips Petroleum Company's leasehold estate in favor of Gaddis-Walker Electric Company is reversed and its action against Phillips is dismissed.

BACON and NEPTUNE, JJ., concur.