**In the Matter of MAHAN & ROWSEY, INC., Debtor-in-Possession.**

**In Re MAHAN ENERGY CORP., Debtor-in-Possession.**

**In Re ROWSEY PETROLEUM, INC., Debtor-in-Possession.**

**Bankruptcy Nos. BK–82–1390, BK–82–1623 and BK–82–1624.**

United States Bankruptcy Court, W.D. Oklahoma.

March 2, 1983.

Charles W. Ellis, Oklahoma City, Okl., for WellTech, Inc.

Murray Cohen and Paul Tobin, Oklahoma City, Okl., for Mahan & Rowsey, Mahan Energy Corp., Rowsey Petroleum, Inc., debtors-in-possession.

Ann L. Faford, Oklahoma City, Okl., for Jones & Pellow Oil Co.

Herbert K. Kenney, Oklahoma City, Okl., for Mid-Plains Petroleum Co., Inc.

· Robert C. Bailey, Oklahoma City, Okl., for Unsecured Creditors Committee.

Linda Williams, Oklahoma City, Okl., for D. McEntire Gold.

Michael C. Mordy, Oklahoma City, Okl., for Beacon Well Service, Inc.

## MEMORANDUM OF DECISION AND ORDER

RICHARD L. BOHANON, Bankruptcy Judge.

Debtors in possession are in the business of producing oil and gas. They have applied for authorization to disburse funds attributable to oil produced from the Tanaka # 2 well which is in Oklahoma. The purchaser, Mid-Plains Petroleum Company, Inc., has paid the funds to the debtors in possession, which are being held pending determination of this motion. Notice was given to the interested parties, claimants and creditors, a hearing was held and briefs were submitted.

The questions presented involve the perfection of oil and gas well liens pursuant to 42 O.S.1981 § 144. The essential question is whether a mechanic's and materialmen's lien statement filed naming only the operator-working interest owner of the Tanaka lease attaches to the interest of other non-operator working interest owners of the same leasehold. The lien statement named only the operator and was filed after assignments to the other owners had been recorded properly.

One of the debtors in possession, Mahan & Rowsey, Inc., is operator of the oil and gas lease. Only a fractional part of the working interest is owned by Mahan & Rowsey or its affiliates, Mahan Energy Corporation and Rowsey Petroleum, Inc. The greater part of the working interest is owned by entities unaffiliated with the debtors in possession who are the non-operator working interest owners.

Mahan & Rowsey operates the lease under a commonly used form Operating Agreement, American Association of Petroleum Landmen Form 610–1977. This agreement was entered into by all of the working interest owners.

Other parties submitting briefs on the application of the debtors in possession, are Jones & Pellow Oil Company, owner of 22.5% of the working interest and Well-Tech, Inc., a statutory lien claimant.

Both Mahan & Rowsey and Jones and Pellow contend that failure of the lien claimants to name the non-operator working interest owners in the lien statements precludes them from having a validly perfected lien against the working interest of the unnamed owners. They rely primarily on *Joe Brown Company v. Best,* 601 P.2d 755 (Okl.App.1979); *Gaddis-Walker Electric Co., Inc. v. Phillips Petroleum Company,* 526 P.2d 964 (Okl.App.1974); and *Forry v. Brophy,* 116 Okl. 99, 243 P. 506 (1926).

On the other hand WellTech argues, based upon an agency theory, that Mahan & Rowsey was agent for the non-operator working interest owners and, by perfecting its lien as to the agent, it also perfected as to the principals, the non-operator, non-debtor working interest owners who were not named in the lien statement. For this proposition it relies on *State ex rel. Mothersead v. Continental Supply Co.,* 137 Okl. 24, 278 P. 269 (1929).

WellTech also contends that under 42 O.S.1981 § 144, "filing of the lien statement in this case is not a precondition to the creation or attaching of the lien." In addition, it argues there is a right to amend its lien statement to name the other owners at any time before the foreclosure trial.

The specific point of law in the context presented here raises an issue of first impression in Oklahoma.[1] As the oil and gas industry finds itself fraught with bankruptcies, many controversies coming before this Court involve interpretation of Oklahoma's lien statutes. We thus feel compelled to respond in the manner we believe the courts of Oklahoma would under the facts presented.

Mechanic's and materialmen's liens may be filed against oil and gas leasehold interests under 42 O.S.1981 § 144.[2] Oil and gas liens are perfected in the same manner as are general mechanic's and materialmen's liens under statutes of the State. 42 O.S. 1981 § 146. Thus, to perfect an oil and gas lien, a claimant is referred to procedures set forth in 42 O.S.1981 § 142.[3]

The purpose of the mechanic's and materialmen's lien statutes is to protect materialmen and laborers, to secure payment of claims, and give notice to the owners and to third persons of the intent to claim a lien for a definite amount. *National Gas Co. v. Ada Iron & Metal Co.,* 185 Okl. 415, 93 P.2d 529 (1929). They also protect innocent purchasers by the recording requirement. Since such liens are in derrogation of the common law, Oklahoma has construed its lien statutes strictly. *Bovasso v. Sample,* 649 P.2d 521 (Okl.1982). Once perfected properly the Oklahoma Court has allowed liberal enforcement of liens. *American Tank & Equipment Co. v. T.E. Wiggins, Inc.,* 170 Okl. 504, 42 P.2d 115 (1935); *Melton v. Quality Homes, Inc.,* 312 P.2d 476 (Okl.1957). Oklahoma is not alone in requiring strict construction of its lien statutes in regard to perfection. See ANNOT., 115 A.L.R.3d 87 (1967); W.L. SUMMERS, OIL AND GAS § 708 at 237 (1962).

The Oklahoma Supreme Court has stated in *American Tank & Equipment Co., supra,* that "liberality should be given to the *enforcement* of the lien, *after the lien has clearly attached,* and not in determining the question as to whether or not a lien exists". 170 Okl. at 505, 42 P.2d at 117. (Emphasis supplied). Likewise in *Melton, supra,* the Court called specifically for conformity to the statutory procedure for perfection.

Since 42 O.S.1981 § 142 specifically requires naming the owners in the lien statement, it is inescapable that failure to name them is a substantial defect in perfection. *Forry v. Brophy,* 116 Okl. 99, 243 P.

---

1. None of the parties have raised any issue of jurisdiction arising from the decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co., et al.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Since this is a contested matter concerning administration of the estate, though affected by state law, it is not deemed to be a "related proceeding", as defined in Rule (d)(3)(A) of the District Court Rule on Referral of Bankruptcy Cases. See Misc. No. 9, United States District Court for the Western District of Oklahoma.

2. "Any person ... who shall, under contract, expressed or implied, with the owner of any leasehold for oil and gas purposes, or the own-er of any gas pipeline or oil pipeline, or with the trustee or agent of such owner, perform labor or services ... shall have a lien upon the whole of such leasehold or oil pipeline ...."

3. This section provides in part:
"Any person claiming a lien as aforesaid shall file in the office of the county clerk of the county in which the land is situated a statement setting forth the amount claimed and the items thereof as nearly as practicable, *the names of the owner,* the contractor, the claimant, and a legal description of the property subject to the lien, verified by affidavit." (Emphasis supplied).

506 (1926), is controlling on this issue. The facts in *Forry* are similar to those here. There a supplier sought foreclosure of its statutory lien against Forry, a working interest owner in an oil and gas well. He held a 1/32 working interest in the well when the supplier filed the lien statement. The lien statement failed to name Forry and named only the other owners. The Oklahoma Supreme Court held that since Forry's name "does not appear any place in the statement . . . no lien existed [against him]." 116 Okl. at 102, 243 P. at 508. *Accord, Joe Brown Company, Inc. v. Best,* 601 P.2d 755 (Okl.App.1979); *Gaddis-Wallker Electric Co., Inc. v. Phillips Petroleum Company,* 526 P.2d 964 (Okl.App.1974).

Claimant WellTech, seeks to avoid the precedent of *Forry* by two propositions. First, it attempts to distinguish *Forry* as a decision interpreting only 42 O.S.1981 § 143, dealing with sub-contractors' obligations for perfecting liens rather than interpreting § 144, the section in issue. However, the analysis contains error. *Forry* did not involve a sub-contractor and evidently was decided under Okla.Comp.St.1921 § 7464. This section is nearly verbatim of the current § 144 regarding oil and gas leases and addresses the issue directly. Since § 7464 practically duplicates current § 144, the *Forry* decision is directly on point.

Next, WellTech asserts its lien existed automatically under § 144 by virtue of its furnishing labor, services, or materials.[4] It argues, therefore, that filing of a lien statement is not a precondition to the creation or attaching of the lien. Perfection, not existence, of the lien is the critical element here and, thus, its position is without merit. See eg. *Anthony v. Dukes,* 130 Okl. 298, 267 P. 462 (1928); *Neves v. Mills,* 74 Okl. 7, 176 P. 509 (1919); *Bryan et al. v. Orient Lumber & Coal Company,* 55 Okl. 370, 156 P. 897 (1916).

WellTech's second proposition rests on a theory of agency law. It contends that since the lien is perfected against Mahan & Rowsey the perfection is good also against the other recorded working interest owners unnamed in it's lien statement.

■ It should be noted before addressing this proposition that, even assuming a valid agency relationship between Mahan & Rowsey and the non-debtor owners, the filing requirements of § 142 still may not be disregarded. *Cf. Neves v. Mills, supra.* Utilization of an agency theory to satisfy strict statutory perfection requirements for liens is an ominous proposition. Nevertheless, since this agency theory has been advanced it deserves to be addressed. WellTech cites the Standard Operating Agreement, to establish the agency argument. It points selectively to Article V–A concerning responsibilities of the operator and Article VI–B concerning subsequent operations. These provisions are submitted to demonstrate the broad grant of authority to Mahan & Rowsey and the argument is made that they make Mahan & Rowsey agent for the other owners.

WellTech fails, however, to focus on Article VII–A of this same Agreement. This provision concerning liability of the parties states in pertinent part:

"The liability of the parties shall be several not joint or collective. Each party shall be responsible only for its obligations, and shall be liable only for its proportionate share of the cost of developing and operating the contract area . . . It is not the intention of the parties to create, nor shall this agreement be construed as creating, a mining or other partnership or association, or render the parties liable as partners."

Article VII–A negates any imputed agency on behalf of Mahan & Rowsey and the non-operator interests. Analysis of this express provision in the Operating Agreement precludes a determination that Mahan & Rowsey was the agent of the non-operator owners of Tanaka # 2. See *Kennedy v. Atchison,* 162 Kan. 694, 178 P.2d 987 (1947);

---

4. WellTech refers the Court to the specific wording of § 144 to wit: "Any person . . . who shall furnish any oil or gas well supplies, or perform any labor in constructing . . . *shall have a lien upon the whole of such leasehold* . . . ." (Emphasis supplied).

2 C.J.S. *Agency* §§ 38, 39 (1972). Their obligation runs to Mahan and Rowsey who in turn has an obligation to operate the lease as a contractor.

■ In addition, absent agreement of the parties or ratification of the unauthorized acts of the agent, the status of the parties may not be one of principal and agent. *D.W.L., Inc. v. Goodner-Van Engineering Company,* 373 P.2d 38 (Okl.1962).

In further support for its agency argument, WellTech offers *State ex rel. Mothersead v. Continental Supply Company, supra.* This case involves a *conditional vendee* of a leasehold and was cited in the similar case of *Adair v. Transcontinental Oil Co.,* 184 Kan. 454, 338 P.2d 79 (1959). What is clear from both of these decisions is that their facts distinguish them from WellTech's argument.

In *Mothersead* and *Adair* the conditional vendee contracted *primarily* for the benefit of the owner of the leases. All additions and improvements to the leases in the course of development became property of the owner. The conditional vendee was in essence only a maintenance operator of the lease. Even as to a conditional vendee however, as the Court in *Adair, supra,* noted, "[i]t is true that as a general rule the conditional vendee of a leasehold estate will not be considered the agent of the owner thereof to permit the creation of liens against the leasehold . . ." 184 Kan. at 464, 338 P.2d at 87. The Court in *Adair, supra,* simply made an exception to the general rule "in cases where the lien indebtedness is created while the conditional vendee of the lease is operating, *not for his own,* but *for the owner's benefit.*" (Emphasis added).

Mahan & Rowsey clearly is not a conditional vendee, nor did it operate the leasehold only for the benefit of the non-operators. *Mothersead* and *Adair* thus do not apply and WellTech's agency theory fails.

Finally, WellTech asserts that amendments to lien statements are allowed by statute, and are liberally granted, especially with respect to changing the name of the party to be charged. From this proposition it then claims that omission of the other owners does not defeat its right to enforce its lien for it may amend even after expiration of the statutory perfection period.

■ 42 O.S.1981 § 172 provides that a lien statement "*may be amended by leave of the court* in furtherance of justice as pleadings may be in any manner, except as to the amount claimed." (Emphasis supplied). Under the statute, amendment of a lien statement is not a right, but requires leave of the court. The necessary leave will not be appropriate when to allow an amendment would operate to abrogate the perfection provisions of 42 O.S.1981 § 142. The obligatory 4 month filing-perfection period for contractors is a positive bar to a lien claimant and no amendment to its lien statement can be effective to perfect its lien retrospectively. Since the lien statement was not amended prior to termination of the statutory period, the condition precedent for enforcement against the unnamed non-operator assignees has not been satisfied and no lien was ever perfected against them. Failing to conform to the requirements of § 142, WellTech may not convincingly argue that perfection of the lien is available by amendment.

In light of the foregoing considerations, the Tanaka proceeds held in trust by the debtors in possession may be disbursed to the non-operator working interest owners absent proper setoff. Accordingly the motion is decided in favor of debtors in possession and Jones and Pellow Oil Company. It is further held that the liens are not validly perfected against entities whose interests were of record at the time the lien statements were filed but who were not named in them.

Pursuant to B.R. 752 this Memorandum of Decision and Order constitutes the findings of fact and conclusions of law. The parties shall settle an order in 5 days.