Michael OLIVER, Charles E. Smith, Owen C. Lawson and June Lawson, Appellants,

and

George C. Mooney, Plaintiff,

v.

PRODUCERS GAS COMPANY, a Texas Corporation, Appellee,

and

Cotton Petroleum Corporation, a Corporation; Ratliff Machines, Incorporated, a Corporation; Briggett, Inc., a corporation; Lee Terry, an Individual; and Russell Lewis, an Individual, Defendants.

Nos. 70612, 70974 and 71074.

Court of Appeals of Oklahoma, Division I.

April 17, 1990.

Rehearing Denied May 29 and June 4, 1990.

Certiorari Denied Oct. 16, 1990.

Roger O. Housely, Norman, for appellant Michael Oliver,

John M. Merritt, Oklahoma City, for appellants Owen C. and June Lawson.

Stephen H. Buzin, Chickasha, for appellant Charles C. Smith.

Burton J. Johnson, Timothy L. Martin, Oklahoma City, for appellee.

MEMORANDUM OPINION

PATRICIA DOUGHERTY
MacGUIGAN, Judge:

This case involves an oil field pipeline explosion. Michael Oliver, Charles E.

Smith, and Owen C. Lawson were three of four persons injured in said explosion who sued Producers Gas Company (Appellee), Briggett, Inc., (Briggett) and others. This case was previously appealed to this Court wherein we affirmed the jury trial verdict in favor of Appellants. Actual damages of $500,000.00 were awarded each Appellant against Appellee and Briggett; and punitive damages of $360,000.00 were awarded to each Appellant against Appellee and an additional $40,000.00 punitive damages were awarded to each Appellant against Briggett. The judgment therefore consisted of joint and several liability of Appellee and Briggett as far as the compensatory or actual damages and the punitive damages were assessed separately against Appellee and Briggett. The Supreme Court denied certiorari in January of 1988.

Briggett was not a party to the original appeal and tendered its insurance policy limits of $120,000.00 to each Appellant in July of 1985. Each Appellant attempted to apply the $120,000.00 insurance policy limits first to pay Briggett's punitive damage assessment of $40,000.00 and the remaining $80,000.00 they attempted to apply to the joint and several actual damages of $500,000.00. Appellants executed a covenant not to execute against Briggett which stated that "... all consideration to be paid by Briggett, Inc. recited herein shall be paid solely on behalf of Briggett, Inc., and no such consideration shall be deemed to have been paid on behalf of the Producers Gas Company or other parties not a party to this agreement ..."

After the Supreme Court issued its order for judgment on supersedeas bond, a hearing was had in the District Court of Grady County to determine the amounts owed by Appellee. The District Court ruled that the entire $120,000.00 paid to each Appellant was to be credited against the joint compensatory award of damages against Appellee and Briggett and that no portion of the amount was to be credited to the separate $40,000.00 punitive damages awarded to each Appellant against Briggett. The trial court in essence determined that any payments received must be applied first to actual or compensatory damages. Each

Appellant timely filed a motion for reconsideration or in the alternative for a new trial. The trial court overruled each motion and all Appellants appealed. The appeals were consolidated under the surviving number of 70,612.

The sole issue for determination in this case is whether the court erred in ruling that Briggett's insurance policy payments of $120,000.00 could not be applied to punitive damages and must be exclusively applied to actual or compensatory damages.

The Supreme Court in *Dayton Hudson Corp. v. American Mutual Liability Insurance*, 621 P.2d 1155 (Okl.1980) identified the public policy of punitive damages to be one of punishment and deterrent. The Court stated:

Clearly the purpose of exemplary damages is to punish and deter. Allowing an insurance company to bear the financial impacts specifically intended for these guilty of "oppression, fraud or malice" is to controvene the very public policy we are charged to recognize and implement. We adopted the [*Northwestern Nat. Cas. Co. v.*] *McNulty* [307 F.2d 432 (5th Cir. 1962)] rule because its reasoning accords best with the current policy of Oklahoma statutory law with respect to imposition of punitive damages. Giving full effect to the purpose punitive damages must serve, we hold that a culpable party is not to be permitted to escape the civil consequences of its wrong.... In almost all jurisdictions which disallow insurance coverage for punitive damages, an exception is recognized for those torts in which liability is vicariously imposed on the employer for a wrong of his servant. In that class of a litigation, public policy does not inhibit a shift in liability incidents to the insurer unless the employer's violation was either directly or indirectly an element in the commission of the harm. We are in accord with this view and hold that public policy against insurance protection for punitive damages does not preclude recovery of indemnity from the insurer by an employer to whom either willfullness or gross negligence of his harm-dealing employee be-

came imputable for imposition of liability under the Oklahoma application of the *respondeat superior* doctrine.

Similar cases have also addressed the public policy issue of punitive damages and have concluded that the purpose of punitive damages is not compensation but is punishment. *LeFlore v. Reflections of Tulsa, Inc.*, 708 P.2d 1068 (Okl.1985). The Supreme Court has further held in *Cox v. Theus*, 569 P.2d 447 (Okl.1977) that a party seeking punitive damages has "only an incidental personal interest" in those damages, and that the party's recovery is complete with the award of actual or compensatory damages. Further, the legal justification for an award of punitive damages ceases to exist without some type of social benefit derived from punitive damages. *Nixon v. Oklahoma City*, 555 P.2d 1283 (Okl.1976). We hold that *in the present case* the public policy of Oklahoma would be thwarted by permitting the insurance proceeds to be applied to the punitive damage award as it would allow the insured to escape the punishment of punitive damages and would allow one other than the actual transgressor to pay the penalty.

Oklahoma's contribution statute, 12 O.S. 1981 § 832(H), provides in part:

H. When a release, a covenant not to sue or a similar agreement is given in good faith to one or two or more persons liable in tort for the same injury or the same wrongful death:

1. It does not discharge any of the other tort feasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

2. It discharges the tort feasor to whom it is given from all liability for contribution to any other tort feasor.

To relieve the tort feasor Briggett, the covenant not to execute must be given in good faith to a tort feasor liable "for the same injury." It operates to reduce the claim to the others to the extent stipulated or in the amount of the consideration paid for it, whichever is greater. In the present case the consideration paid by Briggett's insurance carrier released the liability of Briggett for the joint obligation. The covenant signed by Appellants contains no language that the $120,000.00 payments must be first applied against Briggett's $40,000.00 punitive damage amount. The covenant in no way negates the intent of Briggett that it would be released not only for all liability for the judgment by way of direct action for execution on the judgment but also for all liability for the judgment by way of contribution.

Appellants attempt to advance the argument that payments received by a creditor can be allocated as said creditor chooses citing *Thompson v. Blagg*, 294 P.2d 577 (Okl.1956). Appellants argue also that a debtor has the right to direct the debt or item on which payment shall be credited, and the creditor must make application as directed, citing *Melton v. Quality Homes*, 312 P.2d 476 (Okl.1957). These cases however do not involve the allocation of payment between punitive and compensatory damages nor do they involve a payment of a judgment. Also, Briggett did not owe multiple debts to Appellants.

For the foregoing reasons we hold that the trial court properly allocated the $120,000.00 payments by Briggett to Appellants and was correct in finding that the $120,000.00 payments must be applied to the actual or compensatory damages.

AFFIRMED.

GARRETT, P.J., and HUNTER, V.C.J., concur.