**In the Matter of SPRING FRESH CORPORATION, Sherman Surface and Charlie Thompson, Appellants,**

v.

**OKLAHOMA DEPARTMENT OF SECURITIES, Appellee.**

**No. 76499.**

Court of Appeals of Oklahoma, Division No. 1.

March 24, 1992.

Rehearing Denied April 9, 1992.

Herman D. Brandon, Oklahoma City, for appellants.

Christopher M. Hunt, Oklahoma Dept. of Securities, Oklahoma City, for appellee.

## MEMORANDUM OPINION

GARRETT, Presiding Judge:

Spring Fresh Corporation, Sherman Surface and Charlie Thompson (Appellants) seek review of the order, dated September 20, 1990, of the Oklahoma Securities Commission (the Commission) which affirmed the permanent cease and desist order issued against them by the Administrator of the Oklahoma Department of Securities (Appellee). The Administrator's order, issued June 12, 1990, required Appellants to "cease and desist from offering and/or sell-ing business opportunities in the State of Oklahoma in violation of [71 O.S.Supp. 1985] Section 806 of the Oklahoma Business Opportunity Sales Act."

The Oklahoma Business Opportunity Sales Act (the Act) is found at 71 O.S.Supp. 1985 §§ 801 et seq. The Act makes it unlawful to "offer or sell any business opportunity" unless it is registered, as required by 71 O.S.Supp.1985 § 807, or is exempt under 71 O.S.Supp.1985 § 803. "Business opportunity" is defined under § 802(3)(a):

3. a. 'Business opportunity' means a contract or agreement, between a seller and purchaser, express or implied, orally or in writing, wherein it is agreed that the seller or a person recommended by the seller shall provide to the purchaser any products, equipment, supplies or services enabling the purchaser to start a business and the seller represents directly or indirectly, orally or in writing, that:

(1) The seller or a person recommended by the seller will provide or assist the purchaser in finding locations for the use or operation of vending machines, racks, display cases or other similar devices, on premises neither owned nor leased by the purchaser or seller; or

(2) The seller or a person recommended by the seller will provide or assist the purchaser in finding outlets or accounts for the purchaser's products or services; or

(3) The seller or a person specified by the seller will purchase any or all products made, produced, fabricated, grown, bred or modified by the purchaser; or

(4) The seller guarantees that the purchaser will derive income from the business which exceeds the price paid to the seller; or

(5) The seller will refund all or part of the price paid to the seller, or repurchase any of the products, equipment or supplies provided by the seller or a person recommended by the seller, if the purchaser is dissatisfied with the business; or

(6) The seller will provide a marketing plan.

Appellee's witness, W. Charles Kaiser (Kaiser), testified he was employed as an investigator for Appellee. He contacted Appellant corporation, pretending to be interested in an investment in the company, which provided, for a fee, products and equipment for the purpose of manufacturing soap products. He went to the plant and met the individual appellants, Thompson and Surface. He discussed the investment with Thompson, who explained that his cost would be $9850, for which he would receive a 55 gallon barrel, a wooden stand to put the barrel on, a vat mixer, plastic bottles and bottle caps, the necessary chemicals and 44 hours of training and instruction. These items were referred to as the "Assets of Purchase" on an incomplete form contract, which was shown to him. Thompson told Kaiser he would be expected to produce 100 cases of the product per week and that he could expect to be paid between $1200 and $2800 per month. Thompson said the company would send a truck to his house once a week to pick up the finished product and that Spring Fresh would be contractually obligated to purchase the product at a predetermined price for the length of the contract, which was one year. It was Kaiser's understanding that the company would replenish the chemicals, additives and concentrates at no additional cost to him. Thompson also showed him a copy of a pay scale and told him he could expect a return on his investment within approximately six months of being in operation. Kaiser stated it was his understanding that once Spring Fresh picked up the soap which he produced, Spring Fresh owned it. The pay scale he was given showed that the minimum amount which could be earned for producing 100 cases per week was $14,400.00 per year, in excess of the initial investment.

Another witness testified for Appellee, Stephen Michael Pennington (Pennington). He stated he answered Appellant's newspaper advertisement about the investment. After he was given the information about it, he decided against it. However, he notified the Attorney General's office about it because he did not see how an investor could get a return on his money. He stated he felt the equipment provided was worth only about $250.00. Pennington stated he asked Surface during his meeting if they would allow him to produce 200 cases per week and double his pay. He stated he was told his pay would double "for another [approximately] $10,000 investment".

Appellants contend that the findings of fact in the order on appeal pertain only to an "offer", not an agreement or contract, and there is thus no "business opportunity", as defined by 71 O.S.Supp.1985 § 802(3)(a). Appellants also contend that the proposed agreement was merely a subcontract agreement whereby the subcontractor, i.e., those who were to produce the soap, provides labor in return for remuneration. Thus, they contend Appellee lacks jurisdiction under the Act over the corporation.

The Commission's findings of fact pertinent to this appeal are:

6. The Respondents made oral and written statements which were offers to enter into an agreement or contract whereby Spring Fresh would provide participants the equipment, supplies and training to start a soap manufacturing business in exchange for a consideration of $9,850 to be paid to Spring Fresh by the participants (see State's Exhibit 1).

7. The verbal and written assertions of Respondents also called for Spring Fresh to purchase all soap products produced by the participant. The Respondents promised that Spring Fresh would 'purchase from Subcontractor (participant) finished personal care products at a predetermined price per case (pay scale attached)' (Exhibit A to State's Exhibit 1).

9. The participant would receive a minimum of $14,400 per year if all of the above contractual obligations were met.

10. Respondents Surface and Thompson made verbal assurances to potential participants that a person would receive

their initial investment back in six months to one year.

11. Respondents made verbal and written promises to provide a participant with the necessary training on how to produce, manufacture and bottle the various soap products (see paragraph "A" and Exhibit "A" to State's Exhibit 1).

We do not find any Oklahoma case law wherein the Act in question has been construed or applied. However, see the law review article entitled "The Regulation of Business Opportunities in Oklahoma" (L.R. Article), 39 Okla.L.Rev. 189 (1986), by M. Elizabeth Fast, for information on the Oklahoma Act, the Model Act and regulation by the Federal Trade Commission (FTC).

██ A "business opportunity" is a franchise, regulated under an FTC Rule (the Rule), entitled, "Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures", [16 C.F.R. §§ 436.1–436.3 (1991)], if the following three elements are present. (44 Fed. Reg. 49,968 (1979)):

(1) The franchisee sells goods or services supplied by the franchisor or its affiliate, or by suppliers with which it is required by the franchisor to do business;

(2) The franchisor secures retail outlets or accounts for the goods or services, or secures locations for vending devices or racks, or provides the services of a person to do either;

(3) The franchisee is required to pay the franchisor or an affiliated person in order to obtain or commence the franchised business.

██ As noted in the L.R. Article at page 191, citing 16 C.F.R. § 436.1(a) (1986), the FTC Rule "was designed to protect prospective purchasers from the financial hardships that arise when they purchase franchises and other business opportunity ventures without essential, reliable infor-

mation about them." It also addresses, at page 204, whether concurrent state legislation is preempted by the FTC Rule. If state law provides equal or greater protection to potential investors, it is not preempted by the FTC Rule. 16 C.F.R. § 436.3 n. 2. (1991). There must be compliance with non-preempted state law.[1]

██ Appellants' contention that an offer is not sufficient to invoke the provisions of the Act is not well taken. The Act provides, at 71 O.S.Supp.1985 § 806:

It is unlawful for any person to *offer or sell* any business opportunity, as defined in Section 2 of the Oklahoma Business Opportunity Sales Act, in this state unless the business opportunity is registered under the provisions of the Oklahoma Business Opportunity Sales Act or is exempt under Section 3 of the Oklahoma Business Opportunity Sales Act. (Emphasis added).

All provisions of the Act must be read together so that each provision will be in harmony with each other. *Melton v. Quality Homes*, 312 P.2d 476 (Okl.1957). Throughout the Act, references are made to the "offer or sale" of a business opportunity and the disclosure required to be furnished the purchaser. See §§ 808, 809, 818, 819, and 822. Section 814 allows the Administrator to issue a cease and desist order if it appears "that any person has engaged in *or is about to engage* in any act or practice constituting a violation of any provision" of the Act.

Further, it is sufficient if the seller gives his promise to provide products or services to the purchaser. See "Regulation" at page 208, citing Hermann Industries, Ltd., *Business Franchise Guide (CCH)* ¶ 6430 (Aug. 6, 1982); Garcia Marketing, *Business Franchise Guide (CCH)* ¶ 6415 (May 29, 1980); 44 Fed.Reg. 49,966 (1979).

██ The contention that the payment was to be a remuneration for a labor charge is not supported by the evidence.

---

1. The L.R. Article, at page 204, includes examples of state law provisions not preempted by the FTC Rule:
(1) registration of the offered opportunity; (2) registration of salespersons; (3) escrow or bonding requirements; (4) recordkeeping re-

quirements imposed on the franchisor; (5) substantive regulation of the franchisor/franchisee relationship such as contract restrictions, termination practices, and financing arrangements; and (6) disclosure requirements that are more extensive than those provided by the FTC Rule.

Neither of the witnesses were already involved in a soap manufacturing business. The Commission's finding that the proposed investment would enable the investors to "start a business" is supported by substantial evidence. We note the proposed contract provides, under "Subcontractor's Responsibility":

Subcontractor agrees that he/she will be operating a manufacturing facility of her/his own independently and therefore is responsible as an independent business owner who are (sic) liable for the following: Utilities, personal liability, product liability and property damage insurance as required by law. Workmen's compensation, public liability insurance, sales taxes, old age benefits, unemployment compensation, Federal taxes and State taxes.

Because we find the evidence shows that the proposed contract or agreement is a "business opportunity", this case comes within the provisions of the Act; and, because we find the Oklahoma Act is not inconsistent with the FTC Rule, we hold the Commission had jurisdiction over this case and the Appellants. The cease and desist order was supported by substantial and competent evidence.

AFFIRMED.

BAILEY and ADAMS, JJ., concur.